404 P.2d 614

**U. E. MARCH, Administrator of the Estate of Joseph Bibeau, Deceased, Plaintiff-Appellant,**

**v.**

**SNAKE RIVER MUTUAL FIRE INSURANCE COMPANY, an Idaho corporation, Defendant-Respondent.**

**No. 9339.**

Supreme Court of Idaho.

July 27, 1965.

Thomas A. Mitchell, Coeur d'Alene, for appellant.

Millar & Callister, Boise, for respondent.

KNUDSON, Justice.

Immediately prior to his death which occurred September 26, 1957, Joseph Bibeau lived in the area of Sandpoint, Idaho, and was being cared for by friends, among whom was one Claude N. Simon.

On August 31, 1957, pursuant to a request of Bibeau, Mr. Simon applied, through the Eagles Agency at Sandpoint, for a fire insurance policy covering a house, barn and a quantity of hay situate upon land owned by Bibeau. Pursuant to such application the defendant-respondent, Snake River Mutual Fire Insurance Co., under date of September 10, 1957, issued its policy numbered W 100967 F insuring said buildings and hay against loss by fire, designating "Claude N. Simon as Guardian of Joseph Bibeau" as the insured, with an effective date of August 31, 1957. Said policy is in evidence as plaintiff's exhibit 8. The term of the policy was for five years commencing August 31, 1957, to August 31, 1962, and the annual premium payments of $18.24 each were due and payable on or before the 31st day of August of each year commencing with the inception date of the policy.

At the time the policy was obtained Mr. Simon was not a legal guardian of Mr. Bibeau nor did he have any interest or ownership in the property mentioned except in some hay which was stored on the premises.

On September 26, 1957 Bibeau died. Shortly thereafter Simon filed his petition for probate of a purported will of the deceased Bibeau, which petition was contested and later denied. During the pendency of litigation which followed, the second annual premium on the policy was about to become due and on August 25, 1958 Simon paid it and at the same time requested that the named insured on the policy be changed to "Claude N. Simon," which was then done by endorsement attached to the original policy.

On October 12, 1958 the barn, together with hay therein, which was covered by the policy, was completely destroyed by fire. On October 24, 1958 Simon filed, with the Eagles Agency, a proof of loss wherein it was stated that at the time of the loss "the interest of your insured in the property described therein was *title vests in insured.*" (emphasis supplied)

This action was commenced on April 12, 1961, by plaintiff-appellant, U. E. March, administrator of the estate of Joseph Bibeau, deceased, seeking to recover of and from defendant the sum of $3,000.00 al-

legedly payable under the policy herein mentioned for loss of the barn, together with interest and attorney's fee. Following a trial before the court sitting without a jury, judgment was entered for defendant. Plaintiff filed a motion to amend the conclusions of law, together with a motion for a new trial, each of which motions were denied. This appeal is from the judgment and the orders denying said motions.

Plaintiff asserts a number of errors, one of particular significance being that the court erred in "concluding as a matter of law, if it did, that Claude N. Simon was the insured" under respondent's insurance policy No. W 100967 F. Although the court did not make a specific finding of fact or conclusion of law wherein it is stated that Claude N. Simon was the insured under said policy at the time the loss occurred, the conclusion reached by the court permits of no other construction.

The sequence of important events leading up to the fire loss is not disputed in any substantial degree. The first of such events was the fact that Mr. Simon, pursuant to a request of Bibeau, applied for the fire insurance policy here involved at the time and in the manner hereinbefore stated. The policy was issued to provide fire insurance coverage upon the dwelling and barn belonging to Bibeau and some hay situate in the barn in which Simon claimed some interest. For some undisclosed rea-

son Simon requested or permitted the policy to designate him "as guardian of Joseph Bibeau" as the insured. The record shows and the court found that Simon never was the legally appointed guardian of Joseph Bibeau. It therefore becomes necessary to determine what was the intention of the parties as to the identity of the insured. In this connection the applicable general rule is stated in 29 Am.Jur., Insurance, § 247, p. 628, as follows:

"As in the case of contracts generally, the cardinal principle pertaining to the construction and interpretation of insurance contracts is that the intention of the parties should control. If the intention of the parties can be clearly discovered, the court will give effect to that intention within the sphere of its proper and legal operation and will construe accordingly the terms used in the policy, no matter how inapt, ungrammatical, or inaccurate they may appear when viewed strictly or legally. The rule is that once the intention of the parties is clearly ascertained, a policy of insurance is to be liberally construed in order to carry out that intention, especially where a liberal construction is the reasonable one and a literal construction would lead to manifest injustice."

Throughout his testimony in this connection Simon repeatedly stated that

the insurance he had so applied for and procured was for Joe Bibeau. He, Simon, advanced the insurance premium for the first year but he afterwards filed his claim against the estate of Bibeau for reimbursement of that amount, which action in effect is recognition that the coverage belonged to Bibeau. There is no doubt that the insurance was primarily for the protection of Bibeau's property and that all parties concerned therewith intended and considered Bibeau as the insured under the policy.

The next event of consequence, after the death of Bibeau, occurred on August 25, 1958, at which time Simon called at the office of defendant's agent where he tendered and paid the second annual premium which was shortly to become due on said policy. On this occasion an endorsement was made to the policy amending the policy by changing the name of the insured from "Claude N. Simon, Guardian of Joseph Bibeau" to "Claude N. Simon." In this connection the trial court made the following quoted findings of fact which explain the court's conclusion as to why and how this substitution was made:

"(T)hat after the death of Joseph Bibeau and before the premium came due in 1958, the agent of the defendant, Edna M. Eagles, of Sandpoint, notified the same Claude N. Simon that the premium on said policy was coming due and he went to her office and told her he wanted protection because he had money invested out there. The agent informed him that they could insure him. She told him they would have to change the policy because Bibeau was deceased. Claude N. Simon, on his own behalf, paid the premium and by endorsement the said Edna M. Eagles, the agent for defendant, changed the name of the insured to Claude N. Simon."

The foregoing findings are supported by the record.

Notwithstanding the fact that the court stated that plaintiff's challenge of Simon's and the agent's authority to make such a change in the policy was "one of the main points of issue in this case," the court did not make any specific conclusion of law regarding the validity or invalidity of the substitution thereby undertaken.

■ It is well settled that policies of insurance are written contracts between the parties and are governed by the same rules which are applicable to contracts generally. Boyer v. United States Fidelity & Guaranty Co. (1929), 206 Cal. 273, 274 P. 57. So also, the modification of a contract of insurance is governed by the same rules and the same elements are essential to the modification thereof. American Building Maintenance Co. v. Indemnity Ins. Co. of North America (1932), 214 Cal. 608, 7 P.2d 305.

In order that there may be a modification of a contract of insurance there must be an agreement therefor and neither party has the right to modify the contract without the consent of the other party. Liverpool & London & Globe Ins. Co. v. McLaughlin (1918), 70 Okl. 237, 174 P. 248; Grand Lodge of the Scandinavian Fraternity of America, Dist. No. 7 v. United States F. & Guar. Co. (1940), 2 Wash. 2d 561, 98 P.2d 971; 44 C.J.S. Insurance § 281, p. 1120. In the instant case the modification which was undertaken on August 25th did not have the sanction or consent of both parties to the contract. No authorized representative of the Joseph Bibeau estate took any part in its planning or attempted consummation.

The trial court's finding of fact (hereinbefore quoted) indicates that the manner of accomplishing the modification was the product of defendant's agent's thinking and action. By what authority the agent acted in this undertaking is not disclosed other than by defendant's contention that she so acted at the request of the insured.

We do not agree with defendant's contention that its agent was acting pursuant to a request of the insured. The record is most convincing that initially Joseph Bibeau was the insured. It is generally recognized that in the absence of an express provision in the policy controlling or relating to the matter, a policy of insurance on property is not terminated merely by reason of the death of the insured. 29 Am.Jur., Insurance, § 321, p. 693. If a loss occurs after the death of the insured, the proceeds of the insurance go to his heirs. (See 16 A.L.R. 310.) After the death of the insured the legal representative of the estate would, with whatever approval may be required by the court, have authority to consent to a modification.

No such authority is provided by the terms of the policy. In this connection the following quoted general rule as stated in 44 C.J.S. Insurance § 282, p. 1123, is pertinent:

"In order that an agent, broker, or other insurance representative may bind either the insurer or the insured by a modification of a policy or other contract of insurance, it is of course essential that he possess the requisite authority. If he does not possess such authority in order for the contract as modified to be binding, it is essential that the unauthorized act of such representative be ratified by the purported principal, or that he be estopped to deny that the person purporting to act for him possessed the requisite authority."

The case of Commercial Union Assur. Co. v. Scammon (1888), 126 Ill. 355, 18 N.E. 562, is cited in support of appellant's con-

tention, the facts of which may be briefly stated as follows:

On January 2, 1874, an insurance company issued a fire insurance policy to Scammon for a one year term. During the following March a mortgage company having a mortgage on the property sold the subject property. The insurance company undertook to cancel Scammon's policy and issued the new buyer a policy. On July 14th the building was destroyed by fire. Scammon claimed the sale was void and that he at all times retained possession of the property. The court found that the sale was void and that Scammon had in fact at all times retained possession of the property. The insurance company, upon the sale by the mortgage company, claimed the new policy was issued to the mortgage company with knowledge and consent of Scammon as a replacement of his policy. This contention was denied by Scammon. The court then held that title to the property was at all times in Scammon and that his policy was in full force and effect at the time of the loss. In that case the court stated:

"No one would seriously contend that on such a state of facts the rights of appellee could be defeated. * * * Various theories are attempted to be advanced by counsel for appellant upon this finding, under which it is claimed that the payment of the Babcock policy should be held to discharge all liability on the one issued to appellee. None of them can be maintained. Appellee had nothing to do with the issuing of that policy. He made no claim of rights under it. He could have done nothing to enforce it. He was in no way bound by anything done by Babcock or the mortgage company. * * * Under the finding of the facts by the appellate court the two contracts of insurance are as distinct as though they had been issued by different companies, and, as between appellee and appellant, the Babcock policy is no more available as a defense to this suit than if they had been so issued."

Defendant argues that the reasoning in the foregoing mentioned case is not applicable for several reasons, one of which is that the fire occurred within the period for which the premium had been paid by the insured upon a policy which had been issued to him. There is no merit to a contention that the fire in the instant case did not occur within a period for which the premium had been paid on the policy here involved. The party who paid it may have believed that by making the payment a different result would be accomplished, nevertheless the premium was in fact paid several days in advance of the payment date specified in the policy. The premium was paid for the purpose of extending the cov-

erage on the identical property described in this policy for another year and by one who then claimed a beneficial interest in the property. We are not here concerned with any issue as to whether the one who made the payment is entitled to be reimbursed in such amount.

Defendant's next claimed distinction from the instant case is that the court held that even though the company attempted to issue the second policy as a replacement that they were not in fact one policy, but two separate and distinct policies, the inference being that only one policy is involved in the instant case. This argument appears to be inconsistent with the contention stated later in defendant's brief wherein it is claimed that the original policy expired August 31, 1958, and that "the policy as it was amended was, in fact, a new policy to Claude N. Simon, * * *."

The facts of the case here being considered do not support defendant's contention that the attempted modification created a new policy. In this connection an applicable general rule is stated in 29 Am. Jur., Insurance, § 357, p. 716, as follows:

"As a general rule, a renewal of insurance by the payment of a new premium and the issuance of a receipt therefor, where there is no provision in the policy for its renewal, is a new contract on the same terms as the old, but where the renewal is in pursuance of a provision to that effect, it is not a new contract but an extension of the old."

The policy involved stated it was "for the term of five (5) years" and it contains the following quoted provision which is stated to be applicable to policies issued on budget plan only, to-wit:

"This policy is renewable for periods of one year from each succeeding anniversary date hereof upon issue of a continuation certificate, countersigned by a duly authorized Agent of this Company, and conditioned upon payment of the required premium not later than each such anniversary date. Provided, however, that no such continuation certificate shall extend the policy beyond the term stated hereon."

It is understandable that in view of Simon's claimed right to have the property constituting Bibeau's estate decreed to him, and in anticipation of receiving title thereto he believed he had an insurable interest, however such belief did not authorize or justify the attempted termination or modification of the policy here involved. In order to sustain defendant's theory it would be necessary to assume that Simon and the agent had authority to terminate the policy before the expiration of the first year term. We do not find support for any contention that they possessed authority to

terminate or modify the terms and provisions of this policy in any respect.

 Having determined that Joseph Bibeau was the insured under the policy here involved, appellant as his legal representative is the only proper party who could have sanctioned a modification.

Defendant also urges that the provision in the policy whereby the insured is required to give immediate notice of the loss and within sixty (60) days after the loss render to the company a proof of loss, was not complied with and prevents recovery. There is no showing in this record that plaintiff submitted such proof of loss, however a sworn statement in proof of loss was admittedly furnished defendant on October 24, 1958, just twelve (12) days after the fire. This proof of loss was filed by Mr. Simon, the identical person who originally made application for the insurance and who at that time claimed to be beneficially interested therein. This proof of loss was sworn to before defendant's agent on October 20, 1958, and it contains defendant's adjuster's detailed report of the value of the insured property which was destroyed. The record shows that defendant issued its check for $3,045 in payment of the amount of loss payable under this policy as reported by defendant's adjuster. The only reason the check was not presented for payment was that a request was made to defendant to issue the payment in two separate checks, one for $3000.00 in payment of

its obligation for loss of the barn and one in the sum of $45.00 in payment for the hay claimed by Simon.

 It is generally recognized that like provisions in an insurance contract are for the benefit of the insurer and may be waived by words or conduct inconsistent with an intention to demand strict compliance. The applicable general rule is stated in 29A Am.Jur., Insurance, § 1430, p. 539, as follows:

"Generally speaking, a course of conduct on the part of the insurer evidencing to the insured an admission or recognition of liability or assurances that an adjustment or settlement would be made amounts to a waiver of formal notice and proofs of loss or of defects therein."

In Western Farm Bureau Mutual Ins. Co. v. Lee (1957), 63 N.M. 59, 312 P.2d 1068, the court stated:

"From this recitation of the testimony favorable to the insured it is apparent the case falls within the rules announced and the holding made in the case of Lind v. State Automobile Mut. Ins. Ass'n, 1934, 128 Ohio St. 1, 190 N.E. 138, 141, that conditions of an insurance policy requiring the insured to furnish various notices after loss, in a particular manner, are for the benefit of the insurer and may be waived by words or conduct inconsistent with an

intention to demand exact compliance, from which the insured is led to believe such compliance is unnecessary; * * *."

This court has repeatedly adhered to a like rule and in Sweany & Smith Co. v. St. Paul Fire & Marine Ins. Co. of St. Paul, Minn., 35 Idaho 303, 206 P. 178, said:

"There is no merit in appellant's contention that the right of respondents to recover upon their policies was barred by their failure to make proof of loss within the time limited in the policies. The adjuster for the insurance companies made a thorough investigation of the loss, and offered to settle upon the basis of 50 per cent. of the face of the policies. This was a waiver of proof of loss by a duly authorized agent of the companies, and an acknowledgment of their liability, so as to lead the insured to believe that no formal proof of loss would be necessary."

See also Farmers' & Merchants' Bk. v. Hartford F. Ins. Co., 43 Idaho 222, 253 Pac. 379; Theriault v. California Ins. Co. of San Francisco, 27 Idaho 476, 149 P. 719.

Under the circumstances disclosed by this record we conclude that the defendant waived strict compliance on the part of appellant to file a proof of loss.

Application having been made by appellant for allowance of attorney's fee, the court finds and it is adjudged that $500.00 is a reasonable sum to be allowed appellant as attorney's fee herein.

Having determined that the evidence does not support the conclusion reached by the trial court and that the proper application of the pertinent law requires a different conclusion, the judgment in favor of defendant is reversed and the cause remanded with direction to enter judgment for plaintiff in the sum of $3,000.00 plus interest thereon at the rate of 6% per annum from December 27, 1962, together with the sum of $500.00 as attorney's fee herein. Costs to appellant.

McQUADE, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.