916 P.2d 1275

**TRUCK INSURANCE EXCHANGE, a reciprocal or interinsurance exchange, Plaintiff–Respondent,**

v.

**Anis BISHARA and Selma Bishara, husband and wife; Elias Bishara; Bishara's Auto Service, d/b/a American Oil Company, a Maryland corporation, Defendants,**

**and**

**John E. Doty through Michelle Rice, his Conservator; Antoinette Doty, individually and on behalf of the Estate of Richard E. Doty; Cheryl Doty; Andrea D. Doty; and Christopher G. Doty, Defendants–Appellants.**

**Antoinette DOTY and John E. Doty, husband and wife; Cheryl Doty and Christopher G. Doty, minors by and through their natural parent, Antoinette Doty; Andrea D. Doty, individually; Antoinette Doty, for and on behalf of the estate of Richard E. Doty, Counterclaimants–Appellants,**

v.

**TRUCK INSURANCE EXCHANGE, a reciprocal or interinsurance exchange; John Does I–X, Counterdefendants–Respondents.**

No. 21646.

Supreme Court of Idaho.

May 17, 1996.

Hopkins, Roden, Crockett, Hansen & Hoopes, Idaho Falls; O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Tucson, Arizona, for appellants. Ted A. Schmidt argued.

Cantrill, Skinner, Sullivan & King, Boise, for respondent. Robert D. Lewis argued.

TROUT, Justice.

This is a declaratory judgment action in which Truck Insurance Exchange (Truck) seeks a judicial declaration that it did not act in bad faith in refusing to enter into a settlement agreement with an injured third party.

## I.

### BACKGROUND

The Dotys purchased an automobile from the Bisharas in 1985 upon which new tires had been installed by Elias Bishara approximately one year earlier. Shortly after purchasing the vehicle, two of the tires on the automobile failed while the Dotys were traveling through Arizona, causing the vehicle to roll over. The accident resulted in the death of Richard Doty as well as permanent and severe brain damage to John Doty and varying injuries to the remaining family members in the car.

The Dotys filed suit naming the Bisharas, Kelly Springfield, and various other parties as defendants. The primary basis for Dotys' claim against the Bisharas was negligent installation of the tires while the claims against Kelly Springfield and the other entities engaged in the design, manufacture and sale of the tires were based upon product liability theories.[1]

The Bisharas were insured by Truck with a personal injury liability maximum in the policy of $300,000 per occurrence. A settlement demand for the policy limits was made by the Dotys on September 25, 1987, and extensive negotiations between the Dotys and Truck ensued. Settlement was never

---

1. The only defendants that remained in this action at the time of trial were the Bisharas and Kelly Springfield. None of the other defendants were ever served and the claims against them were dismissed by operation of law.

concluded primarily due to a clause inserted in the Dotys' final proposed settlement agreement to Truck that allowed the Dotys to collect on a judgment against any other tortfeasor for an amount that might ultimately be deemed to be Bisharas' share of fault.

The case was bifurcated for trial with liability issues tried before a jury. The jury found the Bisharas 100% at fault for the accident and damages were set at $4,000,000 by stipulation. Thereafter, the Dotys obtained an assignment of the Bisharas' bad faith claim against Truck in exchange for the Dotys' covenant not to execute upon the judgment.

On appeal, in *Doty v. Bishara*, 123 Idaho 329, 848 P.2d 387 (1992), we ordered reversal of the district court's judgment and remanded the case for a new trial. Truck then filed an action for a declaratory judgment claiming that the insurer was not guilty of negligence or bad faith in failing to settle Dotys' claims against the Bisharas for the policy limits. Both parties filed motions for summary judgment and the district court granted Truck's motion holding that the insurer's refusal to settle did not give rise to a cause of action for bad faith because Truck was never given the opportunity to fully settle the insured's liability within the limits of its policy.

## II.

### STANDARD OF REVIEW

■ A motion for summary judgment must be granted by a district court "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). A review by this Court of a district court's ruling on a motion for summary judgment is the same as that required of the district court when it rules on the motion. *Curtis v. Firth*, 123 Idaho 598, 610, 850 P.2d 749, 761 (1993).

■ The parties to this action both filed motions for summary judgment before the

district court. The court granted Truck's motion and denied the cross motion by the Dotys. The Dotys argue here that the trial court erred in granting summary judgment in favor of Truck. In evaluating this appeal the Court should liberally construe the record in a light most favorable to the Dotys, drawing all reasonable inferences in favor of that party. *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994). If the record contains conflicting inferences or if reasonable minds might reach different conclusions, then the district court's ruling granting Truck's motion must be reversed. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991). If the evidence reveals no genuine issue as to any material fact then all that remains is a question of law over which this Court exercises free review. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994).

## III.

### TRUCK'S REFUSAL TO SETTLE WITH DOTYS

#### A. Standard Governing Truck's Actions

■ An insurer is under a duty to exercise good faith in considering offers to compromise an injured party's claim against the insured for an amount within the insured's policy limits. *Openshaw v. Allstate Ins. Co.*, 94 Idaho 192, 194, 484 P.2d 1032, 1034 (1971). There is also a duty to act in good faith in so-called first party actions where an insured is personally filing a direct claim for benefits with the insurer. *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 96, 730 P.2d 1014, 1016 (1986). In either case, the insured can bring an independent action in tort for the insurer's bad faith in handling the claim. *Id.* An insurer is liable for bad faith refusal to pay a claim to the insured if the insurer intentionally or even negligently denies the claim. *Id.* at 98, 730 P.2d at 1018; *Reynolds v. American Hardware Mut. Ins. Co.*, 115 Idaho 362, 365, 766 P.2d 1243, 1246 (1988). An insurer does not act in bad faith, howev-

er, by challenging the validity of a "fairly debatable" claim made by the insured. *White*, 112 Idaho at 100, 730 P.2d at 1020.

Although we have enunciated the standard for determining whether an insurer has breached its duty of good faith in a first party action we have not previously addressed the standard to be applied when an insured alleges bad faith in the insurer's handling of a claim made against the insured by a third party. In *White*, we noted that the rationale which recognizes a duty of the insurer to exercise good faith in settling third party claims "is equally applicable and of equal importance" to first party claims. 112 Idaho at 97, 730 P.2d at 1017 (quoting *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 375 (1978)). We stopped short, however, of providing a standard of care that should govern the insurer's actions under these circumstances although our opinion does reveal some guidelines.

In *White*, we adopted the standard set by the Arizona Supreme Court in *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986) for determining whether an insurer has acted in bad faith in denying an insured's claim in a first party action. *White*, 112 Idaho at 97–100, 730 P.2d at 1017–20. Although we were not faced with the issue in *White*, the court in *Rawlings* also squarely addressed the standard to be applied to bad faith claims in third party liability actions brought against the insured. 726 P.2d at 571–72. As the court noted, the "equality of consideration" test had already been established in Arizona to determine whether the insurer breached its duty of good faith in rejecting a settlement offer made by a third party. *Id.* (citing *Farmers Ins. Exch. v. Henderson*, 82 Ariz. 335, 313 P.2d 404 (1957)). Simply stated, this test requires the insurer to give "equal consideration" to the interests of its insured in deciding whether to accept an offer of settlement. *Clearwater v. State Farm Mut. Auto. Ins. Co.*, 164 Ariz. 256, 259, 792 P.2d 719, 722 (1990). As the court in *Clearwater* recognized, although the "fairly debatable" standard adequately protects both parties' interests in first party claims, it inadequately

protects the insured's interests in third party actions which, unlike first party claims, may result in "financial ruin" of the insured if settlement efforts are not successful. *Id.* at 259–60, 792 P.2d at 722–23. The impact of an insurer's actions in not paying a claim made by the insured is to thwart "the insured's reasonable expectations under the policy." *Clearwater*, at 259, 792 P.2d at 722. Although by no means insignificant, this result is of far less consequence to an insured than an insurer's refusal to settle a third party claim which, as in the instant case, may well result in multi-million dollar personal liability on the part of the insured in the event of an unfavorable judgment.

Under the "equality of consideration" standard in determining whether an insurer acts in bad faith in failing to settle a claim against its insured, the Arizona courts have listed several factors to be considered by the trier of fact:

> the strength of the injured claimant's case on the issues of liability and damages; attempts by the insurer to induce the insured to contribute to a settlement; failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; the insurer's rejection of advice of its own attorney or agent; failure of the insurer to inform the insured of a compromise offer; *the amount of financial risk to which each party is exposed in the event of a refusal to settle;* the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and any other factors tending to establish or negate bad faith on the part of the insurer.

*General Accident Fire & Life Assurance Corp. v. Little*, 103 Ariz. 435, 439, 443 P.2d 690, 694 (1968) (emphasis in original) (quoting *Brown v. Guarantee Ins. Co.*, 155 Cal. App.2d 679, 319 P.2d 69, 75 (1957)). While we find the Arizona courts' articulation of the "equality of consideration" test and the factors listed to be persuasive, for the purposes of our analysis in Idaho, we restate those factors placing more emphasis on certain considerations which we feel outweigh the others.

First and foremost must be whether the insurer has failed to communicate with the insured, including particularly informing the insured of any compromise offers. In order to avoid liability for bad faith when the insured's potential liability is in excess of the policy limits the insurer, at a minimum, should make a diligent effort to ascertain the facts, communicate the results of such investigation to the insured "and must inform him of any settlement offers that may affect him, so that the insured may take proper steps to protect his own interests." *Ivy v. Pacific Auto. Ins. Co.*, 156 Cal.App.2d 652, 320 P.2d 140, 146 (1958). It is difficult to imagine that an insurance company could be acting in good faith in considering its insured's interests if the insurer does not convey those offers to the insured for the insured's input.

Second, the amount of financial risk to which each of the parties will be exposed in the event an offer is refused must likewise be an important consideration. In analyzing this factor the trier of fact should not simply compare the respective financial strengths of the parties, because in most cases the insurer has considerably more financial ability to gamble on than does the average insured. Rather this factor requires a determination of the impact on the relative financial well being of each of the parties should settlement not be successful. *See, e.g., Ivy*, 320 P.2d at 146.

The remaining factors which we feel are important are the strength of the injured claimant's case on the issues of liability and damages; whether the insurer has thoroughly investigated the claim; the failure of the insurer to follow the legal advice of its own attorney; any misrepresentations by the insured which have misled the insurer in its settlement negotiations; and any other factors which may weigh toward establishing or negating the bad faith of the insurer. While these are factors to be considered, they must take a lesser role to an analysis of the insurer's communication with the insured and the financial impact of a failure to settle.

## B. Dotys' Settlement Proposal

The Dotys brought this action against Truck pursuant to the Bisharas' assignment of their claim of bad faith against Truck to the Dotys in exchange for the Dotys' covenant not to execute upon the judgment obtained at trial. The Dotys' claim rests primarily on Truck's refusal to settle for the policy limits under the final settlement proposal tendered by the Dotys on November 8, 1988, which agreement expired by its terms on November 23, 1988.

Although the settlement proposal contained a release by the Dotys of all direct claims they had against the Bisharas in exchange for the liability limits of the policy, Truck refused to agree to the settlement proposal's terms because it did not include a "*Pierringer*-type" release. In a "*Pierringer*-type" release, a plaintiff credits and satisfies the total amount of damages of the settling defendant and agrees to discharge the pro rata share of that defendant's damages from the total claims against any nonsettling parties. *See Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963). Since the Dotys had named Kelly Springfield as a defendant in the underlying suit, Truck claims that the failure of the Dotys to include such a release would have left the Bisharas vulnerable to unlimited liability in a contribution claim that might be brought against them by Kelly Springfield. The potential for such a contribution claim was significant because, at the time of the accident, Idaho followed the rule of joint and several liability. This rule provided that when the tortious acts of several parties concurrently cause an injury, each tortfeasor is liable for the whole of the damage. *Tucker v. Union Oil Co. of California*, 100 Idaho 590, 600, 603 P.2d 156, 166 (1979). A tortfeasor who pays more than its pro rata share of damages, however, has a statutory right of contribution against other tortfeasors who pay less than their share. I.C. § 6–803. In order to avoid contribution claims by non-settling tortfeasors, I.C. § 6–806 sets forth guidelines that the settling tortfeasor should utilize in drafting a release. The statute provides in pertinent part:

A release by the injured person of one (1) joint tortfeasor does not relieve him from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tortfeasor, of the injured person's damages recoverable against all the other tortfeasors.

I.C. § 6–806. Truck claims that a *"Pierringer-type"* release is the only method sanctioned in Idaho for a settling tortfeasor to avoid future contribution claims brought by nonsettling tortfeasors. With such a release there can be no possibility of a claim by nonsettling tortfeasors for contribution from a settling tortfeasor since the nonsettling party will only pay its pro rata share of damages.

The clause the Dotys included in their settlement proposal, and which they contend provided the Bisharas with the same protection as a *"Pierringer-type"* release, expressly allowed the Dotys to collect on a judgment against any other tortfeasor for an amount that might ultimately be deemed to include a portion representing the Bisharas' share of fault. This clause provided:

> In the event that a jury makes a determination of a percentage of fault attributable to KELLY SPRINGFIELD and awards a judgment in favor of the claimants, the claimants in collecting such judgment from KELLY SPRINGFIELD shall hold in trust all monies collected from such parties in excess to the proportion or percentage of the amount of damages attributable to KELLY SPRINGFIELD and should a judgment of indemnity or contribution be awarded in favor of KELLY SPRING-FIELD and against BISHARAs, BISH-ARA'S AUTO SERVICE and [TRUCK INSURANCE EXCHANGE] or either of them which require [TRUCK INSUR-ANCE EXCHANGE] to pay any sum in excess of its maximum liability established under the Agreement, then claimant shall pay from the trust such monies as needed

to void either the BISHARAs, BISH-ARA'S AUTO SERVICE and [TRUCK INSURANCE EXCHANGE] or either of them from actually paying any sum in excess of the maximum liability.

With this clause, the Dotys were allowed to seek an award of damages from Kelly Springfield that might exceed Kelly Springfield's pro rata share of damages. Although any recovery the Dotys obtained from Kelly Springfield in excess of its pro rata share of damages would initially be placed in trust until any potential contribution claim by Kelly Springfield against the Bisharas had concluded, the Dotys had a theory upon which their hope of a maximum recovery hinged. The Dotys' purpose for utilizing this trust arrangement as opposed to the classic *"Pierringer-type"* release was based upon their hope that, in a contribution action brought by Kelly Springfield against the Bisharas in the event that Kelly Springfield paid more than its pro rata share of damages, the Bisharas would prevail on a "good faith settlement" principle that has been established in other jurisdictions. This principle, which has not been adopted in Idaho, provides that an agreement entered into by an injured party with one of several defendants bars other defendants from seeking contribution from the settling defendant. *See Abbott Ford, Inc. v. Superior Court,* 43 Cal.3d 858, 239 Cal.Rptr. 626, 741 P.2d 124 (1987); *State ex rel. Deere & Co. v. District Court,* 224 Mont. 384, 730 P.2d 396 (1986).

The Dotys' plan, then, was to settle with the Bisharas for the policy limits of their insurance and then sue Kelly Springfield based upon products liability. If Kelly Springfield were found in that action to be even marginally liable for the Dotys' injuries then, under the principle of joint and several liability, the Dotys could collect the full amount of the judgment from Kelly Springfield less the $300,000 already paid them under the settlement proposal with the Bisharas. The amount the Dotys recovered from Kelly Springfield in excess of its pro rata share of damages would, under the settlement proposal, initially be placed in trust

pending the outcome of any contribution action that Kelly Springfield might bring against the Bisharas. If, in the ensuing contribution action, Idaho adopted the "good faith settlement" principle and disallowed contribution to Kelly Springfield by the Bisharas then the Dotys would fully recover their damages.

Truck maintains that the chances are slim that Idaho would adopt the principle of "good faith settlement" and, more importantly, that the trust arrangement advanced by the Dotys would inadequately protect the Bisharas from Kelly Springfield's contribution claim. With regard to this latter consideration, Truck notes that the clause's terms appear only to protect the insurer and, additionally, there is no assurance that the Dotys would not squander the trust funds prior to the conclusion of the contribution action. This would leave the Bisharas liable for the contribution judgment in favor of Kelly Springfield and nothing but a contractual cause of action against the Dotys for its payment. As a result, Truck argues that agreeing to the settlement proposal would itself have been a breach of its duties of good faith to the Bisharas.

Weighing the odds of whether Idaho would adopt the principle of "good faith settlement" so as to prevent Kelly Springfield from obtaining contribution from the Bisharas is largely irrelevant for the purposes of the instant controversy. The Dotys certainly had a right to test this principle in Idaho and, if a policy limits settlement was otherwise indicated, Truck should not have objected to the arrangement offered by the Dotys as long as, by accepting the settlement proposal, the Bisharas were adequately protected. Although this Court has recognized the "*Pierringer*-type" arrangement to be consistent with I.C. § 6–806, it has not mandated that this is the only arrangement available to protect a settling tortfeasor from contribution. As we noted in *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986):

> [b]asically, ["*Pierringer*-type" releases] entail an agreement whereby the plaintiff releases one co-defendant but reserves the right to proceed against the remaining defendants. The nonsettling defendants' right to contribution can then be cut off by the plaintiff's agreement to indemnify the settling defendant against any claims of contribution.

111 Idaho at 779, 727 P.2d at 1207. This arrangement is almost identical to the terms of the settlement proposal. Truck's concerns, however, that the Dotys might abscond with the funds leaving the Bisharas unprotected is a valid one. Truck would then almost certainly be liable for bad faith in agreeing to such a proposal. However, there is no indication in the record that this concern was conveyed to Dotys or that it was an incurable problem. On the other hand, the Dotys note that other concerns may have actually played a larger role in Truck's decision to reject the proposed settlement. Truck's insistence on the "*Pierringer*-type" release may have been based more upon its desire to avoid future defense costs. These costs would have been obviated by a "*Pierringer*-type" release but not if the settlement proposed by Dotys had been accepted.

## C. Application of "Equality of Consideration" Standard

In determining whether Truck acted in good faith we apply the "equality of consideration" test discussed above, and look first at the issue of communication between Truck and the Bisharas. The record in this case is devoid of any evidence that Truck communicated the substance of the settlement proposal to the Bisharas prior to the settlement deadline date in order to allow the insureds to take whatever steps might be necessary to protect their interests. Truck refused to settle on the terms presented by the Dotys because it insisted, from the beginning, on a "*Pierringer*-type" release as a prerequisite for settlement. The settlement proposal, although not strictly a "*Pierringer*-type" agreement, might have been altered,

however, so as to sufficiently protect the Bisharas in the event a contribution action was brought against the Bisharas by Kelly Springfield.[2] If Truck had presented the settlement proposal to the Bisharas who had been adequately apprised of its terms and who then agreed with Truck that a strict "*Pierringer*-type" release was the only settlement offer that would be acceptable, then Truck's refusal to settle on the Dotys' terms would likely not be considered bad faith. On the other hand, since they were faced with substantial personal liability for any potential judgment in excess of the policy limits, the Bisharas might have agreed to the Dotys' proposal notwithstanding the potential for contribution or, alternatively, they might have requested that Truck negotiate terms in the proposal that, although not strictly adhering to *Pierringer*, might have assuaged any concerns the Bisharas had with the settlement proposal as tendered. "An insurer's duty of good faith would be trifling if it did not require an insurer to explore the details of a settlement offer that could prove extremely beneficial to its insured." *Allen v. Allstate Ins. Co.*, 656 F.2d 487, 490 (9th Cir.1981). As the Second Circuit has held:

> where an insured reasonably relies upon its insurer to conduct settlement negotiations, and such insurer neither attempts to secure a modification of the initial settlement demand nor communicates that demand to its insured, the jury may find that the insurer did not act in good faith.

*Young v. American Casualty Co. of Reading, Pennsylvania*, 416 F.2d 906, 910 (2d Cir. 1969), *cert. dismissed*, 396 U.S. 997, 90 S.Ct. 580, 24 L.Ed.2d 490 (1970).

The difficulty here, as we said, is that the record fails to reflect whether the Bisharas were at all consulted that a settlement offer had been made, let alone the substance of that offer. Without any evidence of that vital factor no determination can be made, as a matter of law, whether Truck acted in good faith in refusing to settle the Dotys' claim and, thus, the district court erred in granting summary judgment.

As to the second factor, that of the financial risk to which each party is exposed, an insurer gives equal consideration to the interests of its insured by evaluating a claim "as though it alone would be responsible for the payment of any judgment rendered on that claim" without regard to policy limits and thus conceptually shifting the financial risk of nonsettlement on the insurer. *Little*, 103 Ariz. at 442, 443 P.2d at 697. As stated previously, this factor must be analyzed from the financial perspective of Bisharas, as well as Truck, and here the financial risk of nonsettlement on the insured was substantial. With such a low policy limit in the insurance contract, the bulk of the $4,000,000 in damages would have been borne by the Bisharas personally in the event the parties failed to settle and a judgment eventually went against them. Hence, there appears to be a factual dispute with respect to this factor which is not appropriate for resolution by summary judgment.

As to the remaining considerations, although the strength of the Dotys' case on damages was very strong, the issue of the insured's liability at the time negotiations between the parties were taking place was somewhat less so. At trial the Bisharas' expert, Thomas Dodson, testified that the tires' failure was most likely the result of a manufacturing defect. *Doty*, 123 Idaho at 333, 848 P.2d at 391. Mr. Dodson's determination of a manufacturing defect was apparently of a more recent vintage, however, than when settlement negotiations between the parties were occurring since, at his deposi-

---

**2.** Truck argues that negotiation of the terms of the settlement proposal would have been useless given the Dotys' intransigence in the past. The Dotys' possible unwillingness to modify the terms of the settlement proposal is clearly a question of fact upon which reasonable minds might dis-

agree and is an inappropriate basis upon which to grant Truck's motion for summary judgment. The facts do indicate, however, that Truck failed to make any counterproposal between the time the settlement proposal was tendered and the time it expired two weeks later.

tion taken just after the expiration of the settlement proposal, Mr. Dodson did not know what caused the tires' failure after having performed extensive testing. The Bisharas' forecasted liability for the Dotys' accident is largely irrelevant, however, for the purposes of determining Truck's liability for bad faith. If the Bisharas' liability was seriously at issue the insurer might reasonably have refused to settle based upon the weakness of the Dotys' case. Truck has here, however, always been willing to pay to the Dotys the insurance contract's policy limits and was only reluctant to do so under the terms advanced in the settlement proposal. The other factors likewise deserve consideration and are likely matters over which there may be factual disputes.

For that reason, we vacate the order of the district court and remand this case. In deciding the issue of whether Truck acted in good faith, the trier of fact should look to those factors set forth above, giving primary emphasis on whether the settlement offer was properly communicated to the Bisharas and whether Truck properly considered the financial impact of its actions on the Bisharas. Only if there are no disputed issues of fact as to these considerations would summary judgment be proper.

### IV.

### CONCLUSION

The order granting summary judgment to Truck is vacated and this case remanded to the district court. Costs on appeal to appellants.

McDEVITT, C.J., and JOHNSON and SILAK, JJ., concur.

SCHROEDER, Justice, concurs in the result.

I concur in the result in this case without implying that an assignment of an insured's bad faith claim to a third party is valid. A third party could not bring a bad faith claim directly against the insurer, and there are considerations which may make it bad policy to allow the third party to bring that claim by way of assignment—for example the incentive to present settlement offers that are questionable to create a rejection by the insurance company that may thereafter be challenged as bad faith, thus bootstrapping a very limited policy to an open-ended policy. However, this question has not been presented in this appeal, and the result should not be read as approving assignment of bad faith claims by an insured to a third party.