974 P.2d 1100

**Teena D. SIMPER, Plaintiff–Appellant,**

**v.**

**FARM BUREAU MUTUAL INSURANCE COMPANY OF IDAHO, an Idaho corporation, Defendant–Respondent.**

**No. 23480.**

Supreme Court of Idaho, Boise, November, 1997 Term

March 16, 1999.

Hutchinson, Lammers & Clark, Chtd., Twin Falls, for appellant. Eric R. Clark argued.

Saetrum Law Offices, Boise, for respondent. Rodney R. Saetrum argued.

SUBSTITUTE OPINION THE COURT'S PRIOR OPINION DATED FEBRUARY 25, 1998, IS HEREBY WITHDRAWN.

TROUT, Chief Justice.

This is an appeal from a summary judgment motion granted in favor of respondent Farm Bureau Mutual Insurance Company of Idaho (Farm Bureau) in an action for breach of contract and bad faith. We affirm the district court's decision.

## I.

### BACKGROUND

On November 3, 1994, Teena D. Simper (Simper) was injured in an automobile accident. At the time of the accident, Simper was insured under an automobile insurance policy issued by Farm Bureau. The other vehicle was insured by State Farm. While Simper was in the process of negotiating with State Farm for payment of her damages resulting from the accident, she submitted medical bills to Farm Bureau for payment. Simper received $1,000, the extent of the medical payments coverage in her insurance policy. Upon making the $1,000 payment, Farm Bureau notified State Farm of its subrogation claim against the State Farm insured.

During the pendency of Simper's claim, her automobile policy came up for its annual renewal. At that time, Farm Bureau informed Simper that her premium would increase from the previous year. One of the bases for the increase was that Farm Bureau had not yet been reimbursed for the monies it had paid for her medical bills; therefore, Simper no longer qualified for the "claims-free" discount. Simper paid the increased premium.

Simper then filed suit against Farm Bureau alleging breach of contract, bad faith, and violations of the Unfair Claims Settlement Practices Act. On September 16, 1996, Farm Bureau filed a motion for summary

judgment. The district court granted Farm Bureau's motion on November 26, 1996.

Shortly after Simper filed her notice of appeal from the summary judgment order, Farm Bureau received its subrogated interest, reinstated Simper's "claims-free" discount, and reimbursed Simper for the increased premium she had paid.

## II.

### THE DISTRICT COURT DID NOT ERR IN GRANTING FARM BUREAU'S MOTION FOR SUMMARY JUDGMENT.

#### A. Standard of Review

When reviewing a trial court's ruling on a summary judgment motion, the Court should employ "the same standard properly employed by the district court when originally ruling on the motion." *Lamb v. Manweiler*, 129 Idaho 269, 271–72, 923 P.2d 976, 978–79 (1996) (citing *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994)). Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 271, 923 P.2d at 978 (citing I.R.C.P. 56(c); *Mutual of Enumclaw v. Box*, 127 Idaho 851, 852, 908 P.2d 153, 154 (1995)). The record must be liberally construed in favor of the party opposing the motion for summary judgment, drawing all reasonable inferences and conclusions supported by the record in favor of that party. *Id.* at 272, 923 P.2d at 979 (citing *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 200, 899 P.2d 411, 413 (1995)).

#### B. Breach of Contract

Simper argues that Farm Bureau breached its insurance policy with Simper when, upon renewal of Simper's policy, Farm Bureau increased Simper's premium in response to its payment of the medical benefits claim. More specifically, Simper asserts the following: (1) Farm Bureau lacked contractual authority to apply its underwriting guidelines to the calculation of Simper's premium; and (2) the term "chargeable claim" in the underwriting guidelines is ambiguous.

Simper's insurance policy states the following with respect to policy renewal and premium calculation:

> Policy Renewals. Subject to our consent, you may renew this policy for successive periods by payment to us of the premium we require to renew the policy. Premium payment of any renewal period shall be due on the expiration of the preceding policy period (see policy page 3).

> . . . .

> Audit Premium. The premium stated in the Declarations shall be computed according to our rules and rating plans. . . .

Farm Bureau's underwriting manual contains the guidelines for the calculation of an insured's premium upon renewal, which are referred to as the "Self–Rating Plan (SRP)." The guidelines state as their purpose that "[t]he plan is designed to allow the Company to provide protection to the greatest possible range of risks with each risk paying its fair share of premium based on its own history." The guidelines explain that if there is a "chargeable claim," then a certain number of points are added to the SRP level, depending upon the nature of the chargeable claim. The guidelines define "chargeable claim" to include any claim paid on behalf of the risk that is $750 or more. The guidelines define the "risk" as referring to each vehicle.

■ First, Simper argues that Farm Bureau lacked contractual authority to apply its underwriting manual in the calculation of Simper's premium. Based on the record before us, which includes only particular pages of the insurance policy and the underwriting guidelines, it is clear that Farm Bureau applied its Self–Rating Plan, which was referred to in the insurance policy, in calculating Simper's premium. No evidence has been presented to indicate that Farm Bureau was not entitled to apply the Self–Rating Plan, or that Farm Bureau did not properly follow the Self–Rating Plan.

■ Simper argues also that Farm Bureau lacked contractual authority to apply its underwriting guidelines to Simper's claim for medical payments. More specifically, Simper asserts that a claim for medical pay-

ments is not a "chargeable claim" on behalf of the "risk" because the term "risk" refers to "each vehicle;" therefore, only claims for damages associated with the vehicle should be included as "chargeable claims." Simper gives a labored interpretation of the provision relating to the calculation of premiums in Farm Bureau's underwriting guidelines. The guidelines are clear that a payment of any claim made on the policy will be taken into consideration irrespective of whether it is for medical benefits or some other benefit under the policy.

■ Next, Simper argues that the term "chargeable claim" in the underwriting manual is ambiguous. Simper asserts that a "chargeable claim" does not exist unless Farm Bureau has suffered a loss. In other words, an insured does not pose a risk unless the insurer has suffered a loss. Therefore, Simper contends that Farm Bureau should not have found the $1,000 claim to constitute a "chargeable claim" because Farm Bureau had not yet determined whether it would recover its subrogated interest. However, the term "chargeable claim" is not ambiguous; it is defined in the policy as **any claim paid** on behalf of the insured that is $750 or more. The definition does not state that Farm Bureau must suffer a loss before it will consider a claim it paid on behalf of an insured. Rather, it considers any claims paid on behalf of an insured in calculating the risk of that particular insured. We find that the term "chargeable claim" is not ambiguous and that the district court was correct as a matter of law in determining that Farm Bureau's payment of Simper's $1,000 claim constitutes a "chargeable claim" for the purpose of calculating Simper's premium.

Thus, the district court did not err in granting Farm Bureau's motion for summary judgment with respect to Simper's claim for breach of contract.

## C. Bad Faith

■ Simper alleges that Farm Bureau acted in bad faith when it increased her premium upon policy renewal even though it had not yet determined whether it would recover its subrogated interest. In *White v. Unigard Mutual Insurance Co.*, 112 Idaho

94, 730 P.2d 1014 (1986), this Court held that in order to recover on a bad faith claim, the insured must show: (1) the insurer intentionally and unreasonably denied or delayed payment; (2) the claim was not fairly debatable; (3) the denial or delay of payment was not the result of a good faith mistake; and (4) the resulting harm is not fully compensable by contract damages. *Id.* at 98–100, 730 P.2d at 1018–20. While we recognize that there is an implied duty of good faith and fair dealing relating to insurance contracts between insurers and insureds, we have traditionally dealt with the tort of insurance bad faith only as it arose in the context of settling and paying claims. *See generally Smith v. USAA Property & Casualty Ins.*, — Idaho ——, 974 P.2d 1095 (1999); *Truck Ins. Exch. v. Bishara*, 128 Idaho 550, 916 P.2d 1275 (1996); *White*, 112 Idaho 94, 730 P.2d 1014; *Openshaw v. Allstate Ins. Co.*, 94 Idaho 192, 484 P.2d 1032 (1971). In *March v. Snake River Mutual Fire Insurance Co.*, this Court held that

> [a]s a general rule, a renewal of insurance by the payment of a new premium and the issuance of a receipt therefor, where there is no provision in the policy for its renewal, is a new contract on the same terms as the old, but where the renewal is in pursuance of a provision to that effect, it is not a new contract but an extension of the old.

*March v. Snake River Mut. Fire Ins. Co.*, 89 Idaho 275, 283, 404 P.2d 614, 619 (1965) (quoting 29 AM. JUR *Insurance* § 357). Indeed, in this case, Simper's insurance policy contained a renewal provision and under the precedent of *March*, the contractual relationship between Simper and Farm Bureau continued during the renewal process. However, regardless of the continuing nature of the contractual relationship between Simper and Farm Bureau, we hold that the facts of this case are not sufficient to constitute a cause of action in insurance bad faith. In raising Simper's insurance premium before it had determined whether it would recover its subrogated interest, Farm Bureau in no way "intentionally and unreasonably denied or withheld payment." Accordingly, the district court did not err in granting Farm Bureau's

motion for summary judgment with respect to Simper's claim for bad faith.

### D. Unfair Claims Settlement Practices Act

 Simper asserts that Farm Bureau violated the Unfair Claims Settlement Practices Act, and such a violation constitutes a common law claim. Idaho's Unfair Claims Settlement Practices Act does not allow for a private right of action for violation of its provisions. *White*, 112 Idaho at 101, 730 P.2d at 1021. The Court in *White* stated that a statutory remedy is unnecessary because the tort of bad faith provides an avenue for asserting violations of the Unfair Claims Settlement Practices Act. *Id.* Aside from the bad faith cause of action, there is no common law cause of action which would utilize the Act as a standard of conduct or a guideline. Because Simper cannot bring a cause of action for violations of the Unfair Claims Settlement Practices Act, the district court did not err in granting Farm Bureau's motion for summary judgment with respect to Simper's claim under the Act.

### III.

### ATTORNEY'S FEES

 Farm Bureau asserts that it is entitled to attorney's fees on appeal pursuant to I.C. § 12–121 and I.R.C.P. 54(e)(1). An award of attorney's fees is proper under Rule 54(e)(1) and I.C. § 12–121 if the Court is left with the "abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably and without foundation." *Balderson v. Balderson*, 127 Idaho 48, 54, 896 P.2d 956, 962, *cert. denied*, 516 U.S. 865, 116 S.Ct. 179, 133 L.Ed.2d 118 (1995) (citing *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979)). Because Simper presented legitimate issues related to the insurer's duty in calculating premiums, we find that Simper's appeal was not frivolous and, therefore, we will not award attorney's fees on appeal to Farm Bureau.

### IV.

### CONCLUSION

We affirm the district court's grant of Farm Bureau's motion for summary judg-

ment. We award costs but not fees to Farm Bureau on appeal.

Justices SCHROEDER, WALTERS and Justice Pro Tem JOHNSON, CONCUR.

Justice SILAK, CONCURS IN PART AND DISSENTS IN PART.

I concur in the Court's opinion but dissent from Part II C. The majority holds that an insured may not claim damages for the tort of bad faith arising from the renewal of an insurance policy. I disagree with this holding for the following reasons.

In *Featherston v. Allstate Ins. Co.*, 125 Idaho 840, 843, 875 P.2d 937, 940 (1994), the Court recognized that a tort remedy in negligence was available where an insurance agent for Allstate had allegedly undertaken a duty to a new customer, who later became an insured, to sell the new customer an insurance policy that provided underinsured motorist coverage. The insured, Featherstone, sued after an accident in which a member of his family was injured by an "errant, underinsured motorist," and Featherstone attempted to recover for the injuries from Allstate. *Id.* at 841, 875 P.2d at 938. The Court in *Featherston* relied on *White v. Unigard*, 112 Idaho 94, 99, 730 P.2d 1014, 1019 (1986), noting that *White* had recognized the "'special relationship between insurer and insured which requires that the parties deal with each other fairly, honestly, and in good faith,' and acknowledges the disparity in bargaining power between the insurer and the insured." *Featherston*, 125 Idaho at 843, 875 P.2d at 940. The factual situation in *Featherston* did not involve an assertion that tortious conduct had been committed in connection with the settling and payment of a claim, but rather whether terms of a policy had been tortiously omitted to the detriment of the policyholder.

In the instant case, the assertion of a bad faith claim likewise concerns the terms of the policy, although not a new policy but an ongoing insurance contract. *See March v. Snake River Mut. Fire Ins. Co.*, 89 Idaho 275, 280, 404 P.2d 614, 619 (1965). As in

*Featherston*, the Court here should have permitted the claim of bad faith to be tried.[1]

The adhesionary nature of the insurance relationship which was a fundamental basis for *White v. Unigard's* recognition of the tort of bad faith is evident here. In the renewal term of this contract, Farm Bureau stated, "Subject to our consent, you may renew this policy for successive periods by payment to us of the premium we *require* to renew the policy." (emphasis added). Simper's premiums were increased due to a claim Simper made as a result of being injured in an accident that was not her fault. Additionally, when Farm Bureau increased the premiums, it was aware that it would be subrogated to Simper's rights against the negligent driver. Indeed, Farm Bureau was eventually reimbursed for the claims made by Simper.

Based upon the unique relationship between an insurer and an insured which continued during the renewal process, I believe that further inquiry is necessary to determine if the facts of this case establish a cause of action for the tort of bad faith. Accordingly, I would vacate the order of the district court granting summary judgment to Farm Bureau on Simper's bad faith claim based on the insurance company's renewal practices.

---

**1.** Other jurisdictions have imposed a duty of good faith on insurers in situations involving the adjustment of retrospective insurance premiums, which are premiums that are adjusted based on the insured's claims history. *See Benton Express, Inc. v. Royal Ins. Co. of America*, 217 Ga.App. 331, 457 S.E.2d 566, 567 (1995); *Nat'l Sur. Corp. v. Fast Motor Serv., Inc.*, 213 Ill.App.3d 500, 157 Ill.Dec. 619, 572 N.E.2d 1083, 1087 (1991).