923 P.2d 976

**Kevin LAMB, Plaintiff–Appellant,**

v.

**Howard MANWEILER, Defendant–Respondent.**

**No. 22549.**

Supreme Court of Idaho,
Boise, January 1996 Term.

Aug. 15, 1996.

Rehearing Denied Oct. 4, 1996.

Ellis, Brown and Sheils, Chtd., Boise, for appellant. Allen B. Ellis argued.

Wilson, Carnahan & McColl, Boise, for respondent. Jeffrey M. Wilson argued.

SCHROEDER, Justice.

This is an appeal of the dismissal of an attorney malpractice action. Kevin Lamb (Lamb) filed suit against Howard Manweiler (Manweiler) who had represented Lamb in criminal proceedings. Lamb contends that Manweiler was negligent in his representation. The district court granted Manweiler's motion for summary judgment. The district court's decision was vacated and the case remanded by the Court of Appeals. This

Court granted Manweiler's Petition for Review.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

In 1989 Lamb was initially charged with nine felonies relating to his cattle operations. Manweiler defended Lamb in these criminal proceedings. Lamb entered pleas of guilty to four felony counts as a result of negotiations. The remaining felony charges were dismissed. The pleas were entered upon the advice of counsel.

Prior to Lamb's sentencing Manweiler discovered evidence which cast doubt on the validity of two of the four guilty pleas. Manweiler moved to withdraw two of the four guilty pleas, and the district court granted the motion. Manweiler withdrew as Lamb's attorney on the remaining counts on the grounds that he could not ethically present a motion to withdraw the guilty pleas on the two remaining charges. New counsel presented a motion to withdraw the remaining two guilty pleas. The district court denied the motion. Lamb was sentenced to a two-year fixed period, followed by a five-year indeterminate period. He initiated an appeal and post-conviction relief proceedings which were subsequently dismissed pursuant to a stipulation with the State.

Lamb brought the present action against Manweiler, alleging that Manweiler committed professional malpractice in representing him in the criminal matters. Lamb argued that Manweiler negligently (1) advised Lamb to plead guilty to four criminal counts and advised him that the guilty pleas could be withdrawn; (2) advised Lamb that the jury would find him guilty of all or some of the charges against him; (3) withdrew as Lamb's counsel immediately before the hearing on Lamb's motion to withdraw the guilty pleas, thereby prejudicing Lamb's chances of having his change of plea accepted; and (4) failed to adequately investigate the criminal charges and to determine that the charges were not meritorious. Lamb asserted that the negligent acts by Manweiler resulted in Lamb's incarceration and additional damages.

The district court denied Manweiler's initial motion for summary judgment or alternative motion for dismissal, but the district court subsequently granted Manweiler's renewed motion for summary judgment. The district court held that the sole issue before it was whether Lamb was guilty of the underlying criminal charges upon which he based his claim of legal malpractice, reasoning that if Lamb were guilty of the underlying charges, a *prima facie* element of proximate cause in his cause of action could not be shown. The district court reviewed the affidavits presented, the transcripts of the sentencing hearing and the entry of Lamb's guilty pleas and found evidence of Lamb's guilt of the crimes charged, concluding that Lamb failed to come forward with sufficient evidence to rebut his admissions of guilt or to establish the existence of a genuine issue of fact regarding his guilt. Summary judgment was granted in favor of Manweiler. The Idaho Court of Appeals reversed the district court's grant of summary judgment.

## II.

## STANDARD OF REVIEW

■ On appeal from the Court of Appeals, this Court considers that it is hearing the matter in the first instance, and not merely reviewing the Court of Appeals decision. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). When reviewing a decision of the Court of Appeals this Court gives consideration to the ruling of the Court of Appeals, but performs an independent appellate review of the trial court's decision. *State v. Russell*, 122 Idaho 488, 490, 835 P.2d 1299, 1301 (1992).

■ Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Mutual of Enumclaw v. Box*, 127 Idaho 851, 852, 908 P.2d 153, 154 (1995). When this Court reviews the district court's ruling on such a motion, this Court employs the same standard properly employed by the district court when originally ruling on the motion. *Friel v. Boise City Hous. Auth.*, 126 Idaho

484, 485, 887 P.2d 29, 30 (1994). Both this Court and the district court must liberally construe the record in favor of the party opposing the motion for summary judgment, drawing all reasonable inferences and conclusions supported by the record in favor of that party. *City of Chubbuck v. City of Pocatello,* 127 Idaho 198, 200, 899 P.2d 411, 413 (1995).

## III.

## ELEMENTS OF LEGAL MALPRACTICE ACTION ARISING FROM REPRESENTATION OF A DEFENDANT IN A CRIMINAL CASE

 The elements required to establish a claim for attorney malpractice arising out of a civil action are: (1) the creation of an attorney-client relationship; (2) the existence of a duty on the part of the lawyer; (3) the breach of the duty or of the standard of care by the lawyer; and (4) the failure to perform the duty must have been a proximate cause of the damages suffered by the client. *Marias v. Marano,* 120 Idaho 11, 13, 813 P.2d 350, 352 (1991); *Johnson v. Jones,* 103 Idaho 702, 706, 652 P.2d 650, 654 (1982). The plaintiff bears the burden of proving that the attorney has been negligent or has failed to act with proper skill, as well as the burden of showing that the defendant's negligence was the proximate cause of the plaintiff's damages. Without proximate cause there is no liability for negligence in a malpractice action. *Marias,* 120 Idaho at 13, 813 P.2d at 352; *Murray v. Farmers Ins. Co.,* 118 Idaho at 224, 227, 796 P.2d at 101, 104 (1990); *Johnson,* 103 Idaho at 706, 652 P.2d at 654. In a legal malpractice action, the plaintiff must establish that he or she would have "some chance of success" in the underlying action before he or she would be entitled to recover from the attorney. *Murray,* 118 Idaho at 227, 796 P.2d at 104; *e.g., Fitzgerald v. Walker,* 121 Idaho 589, 592, 826 P.2d 1301, 1304 (1992). Lamb does not dispute the proposition that in a legal malpractice action arising from representation of a defendant in a criminal proceeding, the person pursuing the claim must establish the additional element of actual innocence of the underlying criminal charges.

## IV.

## LAMB CANNOT ESTABLISH THAT COUNSEL'S ADVICE WAS THE CAUSE OF DAMAGES HE SUFFERED BY PLEADING GUILTY.

 Lamb argues that it was Manweiler's negligent advice that caused Lamb to enter the guilty pleas. Manweiler, being the party moving for summary judgment, bears the initial burden of establishing the absence of a genuine issue of material fact. *State v. Shama Resources Ltd., Partnership,* 127 Idaho 267, 270, 899 P.2d 977, 980 (1995); *Tingley v. Harrison,* 125 Idaho 86, 90, 867 P.2d 960, 964 (1994). Manweiler has presented evidence that he did not negligently advise Lamb with respect to his guilty pleas. Manweiler avers that he did not advise Lamb that a guilty plea could be withdrawn without just legal cause and that he never possessed information that would legally justify the withdrawal of the pleas of guilty upon which Lamb was convicted and sentenced.

In his petition for post conviction relief Lamb asserted that prior to entering the guilty pleas, he told Manweiler he was not guilty. Lamb presented evidence in support of this assertion in his affidavit filed February 1, 1991. In this affidavit, Lamb set forth his statements and explanations of the course of events leading to the charges being brought against him. Lamb averred that "I, at all times planned on having the pleas withdrawn, because I was convinced, as I still am, that I am innocent. And I'm being incarcerated by 'Default,' because of my attorney." Lamb submitted a second affidavit in which he stated that "at the time of the guilty plea I thought, because of advice of counsel, that the jury could find me guilty of intent to defraud, even though the alleged victims knew of and agreed to all my actions. I therefore thought a jury could find me guilty, however, at this time I know that would be impossible because we could prove that the alleged victims knew of all my actions, agreed to the same and encouraged them for their own monetary gain." Lamb asserted his "innocence" of the crimes charged and supported his assertions with his account of the events leading up to his being charged with the crimes for which he was incarcerated.

Regardless of Lamb's assertions, the record is irrefutable that he was properly advised that he could not withdraw the pleas of guilty at issue in this case. That advice was given by the district judge who ultimately accepted the pleas and who would not allow Lamb to withdraw them. Much emphasis is placed upon the development of a complete record in the courtroom to protect the rights of the accused. That record also protects others. It is not necessary to weigh the credibility of Lamb and Manweiler when the record establishes that Lamb was properly advised and proceeded with that advice in mind. A review of the transcript of the change of plea hearing of March 23, 1990, establishes what Lamb knew.

When Lamb appeared in the district court on the underlying charges that resulted in his incarceration the possibility of withdrawing the pleas of guilty was specifically addressed, along with a number of other issues that indicated that he understood the nature of the proceedings and their conclusiveness. Prior to entry of the pleas Manweiler specifically addressed problems on the two counts to which guilty pleas were entered and subsequently withdrawn, there being no objection from the prosecution. When asked by the district judge if Lamb wanted to withdraw the pleas of not guilty he had previously entered and plead guilty, Manweiler stated the following:

We would, if it please the Court, on one condition. And that is that we would tender a conditional plea of guilty to those two charges provided I can convince Mr. Kane [the prosecutor] over there that they're not exactly what they're supposed to be. That we might take that into consideration at the time of sentencing.

No similar reservation was stated as to the two charges at issue to which Lamb entered pleas of guilty and was not allowed to withdraw.

Following these preliminary statements the district judge engaged Lamb in an extended colloquy concerning his rights. Lamb indicated that he had heard a lengthy discussion with another individual that had pled guilty. He specifically acknowledged his understanding that when he pled guilty he gave up his constitutional right to a trial, the

presumption of innocence, the right of confrontation and cross-examination, and the right against compulsory self-incrimination. He had no questions about those rights, said he understood them, and voluntarily and intentionally waived those rights. Additionally, Lamb indicated that his education consisted of high school and two years of college.

Lamb said he understood that no plea agreements that might have been made were binding on the court and indicated he had not been threatened, coerced or intimidated to plead guilty.

The district judge specifically addressed the question of whether Lamb could withdraw his guilty pleas:

COURT: Do you realize that if I accept your pleas of guilty they are final pleas? I will not allow you to withdraw those pleas like I did in the other cases?
DEFENDANT: Yes, sir.

Whatever Lamb claims his attorney said, those statements cannot be a proximate cause of any damages to him. He was properly informed in court by the judge as to his rights and the consequences of his guilty pleas. Specifically, he could not withdraw those pleas. He acknowledged that he understood that fact, indicated he did not have questions, and said he still wanted to enter pleas of guilty. Thereafter he pled guilty. The district judge engaged him in extensive discussion of the charges and his decision to proceed with the guilty pleas. The advice the court gave Lamb, together with Lamb's clear indications that he understood the proceedings, supersedes any ideas he might have had before that he could withdraw the pleas.

The following questions were asked and answers given:

COURT: Do you still want to enter pleas of guilty?
DEFENDANT: Yes, sir.
COURT: Would you be doing so freely, voluntarily, knowingly and intentionally, and because you are in fact guilty?
DEFENDANT: Yes, sir.

Although the following statements were made with regard to a plea the district judge allowed to be withdrawn, the statements are

applicable to the charges at issue in this case. The statements were made with regard to the question of whether a jury might find the defendant guilty, and the defendant's response that it could appear he was guilty.

> COURT: And you realize that it's not for your attorney or the State's attorney or me to make that decision? It is for the jury or yourself. You're the only one that has the right to have the jury make the decision or you make the decision. Do you understand that?
>
> DEFENDANT: Yes, sir.

The following dialogue took place with regard to the counts in issue.

> COURT: In the other case, Count I, the 20th day of May 1988, 65 Brahma-cross heifers, what did you do in that case?
>
> DEFENDANT: We obtained from the victim a right to sell those heifers—The victim had given us many times before the right to do the same thing that was done here. We believe we had him sign a Bill of Sale on them. He allowed me to keep the money. He's done that before many times, judge. When recounted by the people investigating the case, due to his age and I don't know what else, he didn't seem to remember this.
>
> COURT: Okay. So you're saying that after reviewing the evidence the State has—the facts and circumstances—would probably lead 12 reasonably minded people to find you guilty of intentionally depriving him, permanently depriving him, of his cattle?
>
> DEFENDANT: Yes, sir.
>
> COURT: And that's also with regard to Count II, $97,968?
>
> DEFENDANT: Yes, sir.

While Mr. Lamb's numerous financial transactions may have been complex, the elements of the two grand theft charges were not. From the transcript of the pleas it is clear that he knew the elements and knew the facts. He knew that he might have a defense to the charges before he pled guilty. He also knew the choice of whether to plead guilty was his, not that of his attorney. The choices he had were explained by the district judge and acknowledged by Mr. Lamb. The proximate cause of any damage he may have suffered is the decision to plead guilty following a thorough advice of rights by the district judge concerning the charge.

## V.

## CONCLUSION

The district court's decision granting summary judgment to Manweiler and dismissing Lamb's complaint is affirmed. Costs are awarded to respondent. No attorney fees are allowed.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.