988 P.2d 1199

In re SRBA, Case No. 39576, Multiple–Use Sustained–yield Act Claims, Consolidated Subcase No. 63–25239.

UNITED STATES of America, Appellant,

v.

CITY OF CHALLIS, City of Salmon, Amalgamated Sugar Co., Basic American, Inc., City of Pocatello, Lamb–Weston, Ore–Ida Foods, Inc., Shearer Lumber Products, Harrison Canal Co., Egin Bench Canal, Inc., Progressive Irrigation District, New Sweden Irrigation District, Enterprise Irrigation District, North Fremont Canal Systems, Inc., Burgess Canal & Irrigation Co., Idaho Irrigation District, Snake River Valley Irrigation District, Peoples Canal & Irrigation Co., A & B Irrigation District, Burley Irrigation District, Twin Falls Canal Co., North Side Canal Co., State of Idaho and Hecla Mining Company, Respondents.

No. 24560.

Supreme Court of Idaho, Boise, March 1999 Term.

Oct. 1, 1999.

Betty Richardson, United States Attorney, Boise; Jeffrey C. Dobbins, Department of Justice, Washington, D.C., for appellant United States of America. Jeffrey C. Dobbins, argued.

Beeman & Hofstetter, P.C., Boise, for respondents City of Challis, City of Salmon, Amalgamated Sugar Co., Basic American, Inc., City of Pocatello, Lamb–Weston, Ore–Ida Foods, Inc., Shearer Lumber Products.

Rigby, Thatcher, Andrus, Rigby, Kam & Moeller, Chtd., Rexburg, for respondents Harrison Canal Co., Egin Bench Canal, Inc., Progressive Irrigation District, New Sweden Irrigation District, Enterprise Irrigation District, North Fremont Canal Systems, Inc., Burgess Canal & Irrigation Co., Idaho Irrigation District, Snake River Valley Irrigation District, Peoples Canal & Irrigation Co., A & B Irrigation District, Burley Irrigation District, Twin Falls Canal Co., North Side Canal Company.

Hon. Alan G. Lance, Attorney General; Clive Strong, Deputy Attorney General, Boise, for respondent State of Idaho. Clive Strong argued.

Root & Schindler, P.C., Denver, for respondent Hecla Mining Co. Thomas E. Root argued.

TROUT, Chief Justice.

This is an appeal from an order denying summary judgment to the appellant, the United States, for federal reserved water rights claims based on the Multiple–Use Sustained–Yield Act of 1960 and from an order granting Rule 54(b) certification. We affirm both orders.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises out of the Snake River Basin Adjudication (SRBA), a suit for general adjudication of water rights in the Snake River water basin. At issue are thirty-seven[1] claims by the United States for water rights within the Boise, Payette, Clearwater, Nez Perce, Sawtooth, and Salmon–Challis National Forests in Idaho. The claims are based upon the Multiple–Use Sustained–Yield Act of 1960 (MUSYA) and were consolidated as Subcase No. 63–25239. *See* Multiple–Use Sustained–Yield Act of 1960, 16 U.S.C. §§ 528–531 (1985). The United States claims a priority date for those water rights as of MUSYA's enactment, June 12, 1960. The majority of the claims are also based on an alternative state law appropriative water right. *See* footnote 1.

The United States asserts that MUSYA provides a basis for non-consumptive, instream flows to allow for water to remain in streams and lakes for the purpose of protecting recreational values, fish and wildlife. Upstream water rights could potentially be curtailed if the claims were granted; however, downstream users would be allowed to divert water.

The MUSYA claims were originally filed in 1993. At the time of filing, the United States combined its state law and federal law claims in one notice. The Idaho Department of Water Resources (IDWR) subsequently split the claims because both claims would be reported and investigated separately. The United States later moved the district court to allow for amending the claims to reflect that the claims represented a singular claim with two different supporting theories. The district court granted the United States' motion to allow for amending the claims.

On February 27, 1997, the State of Idaho (the State) filed a motion for summary judgment arguing that MUSYA did not establish a basis for an implied federal reserved water right. A number of objectors joined in the State's motion for summary judgment. The United States also filed a motion for summary judgment on April 18, 1997, asserting that no material facts were in dispute as to the United States' entitlement under MUSYA to federal reserved water rights for the purposes specified in MUSYA. After hearing argument on the cross-motions for summary judgment on May 20, 1997, the SRBA District Court entered an Order Granting and Denying the United States' Motions for Summary Judgment on Reserved Water Rights Claims. The district court held that as a matter of law, the United States was not entitled to a federal reserved water right under MUSYA.[2] The district court found that MUSYA did not create a reservation of land and that absent a reservation for specif-

1. Both sides dispute the number of claims at issue. Specifically, the State of Idaho argues that there are 37 claims at issue, but that the state law portion of nine of the claims was withdrawn. Thus, only 28 of the claims are dual-based (*i.e.* having state and federal law bases for the claims) and nine of the claims exist with solely a federal law basis. In contrast, the United States asserts in its reply brief that only 28 claims are at issue, all of which are dual-based. The United States acknowledges that for nine claims, the state law portion of the claims was officially withdrawn through correspondence with the Idaho Department of Water Resources. However, in their briefing and during oral argument, the United States stated that the nine companion claims based on federal law had also been effectively abandoned by putting the parties on notice through correspondence and communications and by excluding the nine claims from discovery reports filed with the SRBA District Court. At oral argument, the United States asserted that it did not wish to resurrect those nine claims on appeal and that they had been waived.

Although we acknowledge that, based on the assertions of both parties, the nine state law-based claims have been withdrawn, we do not find it sufficient for the United States to simply assert on appeal that the federal law claims have been abandoned and are thus not before the Court on this appeal. Without some formal withdrawal of those claims either with the district court or this Court, there is no formal record that those claims are no longer before this Court on appeal.

2. In the same order denying summary judgment to the United States on the MUSYA claims, the district court granted summary judgment to the United States on various water right claims based on the Wilderness Act (Subcase No. 75–13605) and the Hells Canyon National Recreation Area Act (HCNRA) (Subcase No. 79–13597). The State of Idaho and a number of other objectors appealed the district court's decision on the Wilderness Act and HCNRA claims. Those claims are addressed in separate appeals.

ic MUSYA purposes, the MUSYA purposes were secondary and could not support an implied reservation of water.

On January 29, 1998, the district court, sua sponte, determined that I.R.C.P. 54(b) certification was proper for the federal reserved water right MUSYA claims. Specifically, the district court found that the claims were fully severable from the state law-based claims and therefore constituted final judgment. A subsequent motion for reconsideration of the court's order granting Rule 54(b) certification filed by the United States was denied. The United States now appeals to this Court.

## II.

## DISCUSSION

### A. RULE 54(b) CERTIFICATION WAS PROPER.

 The fact that the district court certifies a judgment as final and appealable under Rule 54(b) does not restrict the Court's right to review the matter. *Rife v. Long,* 127 Idaho 841, 844, 908 P.2d 143, 146 (1995). In order for a partial summary judgment to be certified as final and appealable under Rule 54(b), the order granting partial judgment must finally remove one or more of the claims between some or all of the parties, otherwise, the certification is in error. *Thorn Creek Cattle Ass'n, Inc., v. Bonz,* 122 Idaho 42, 45, 830 P.2d 1180, 1183 (1992) (citing *Toney v. Coeur d'Alene Sch. Dist. No. 271,* 117 Idaho 785, 786, 792 P.2d 350, 351 (1990)).

 Initially, we note that in presenting the factual and procedural background to this case, we determined that because the United States had withdrawn the state law portion of nine of the claims, those claims on appeal are asserted only under federal law and are not supported by an alternative state law basis. *See* footnote 1, *supra.* Our determination in that regard effectively resolves the Rule 54(b) certification issue because the United States' argument against certification, that the district court's decision did not finally dispose of any of the claims due to the remaining alternative state law bases for the claims, at least for nine of the claims, no longer exists. Accordingly, we are able to address whether MUSYA provides a basis for federal reserved water rights and we need not determine whether the district court erred in holding that the MUSYA claims were appropriate for Rule 54(b) certification.

However, we find it important to note that even if all of the claims comprising Subcase No. 63–25239 were based on both federal and state law, Rule 54(b) certification, in this instance, would be proper. Although the United States presents a valid argument that the water rights claimed in this appeal are essentially single claims with alternative legal bases, and thus, not final and appealable under Rule 54(b), the Rule must operate differently within the SRBA. The SRBA is essentially one large case, which will resolve myriad water right disputes within the Snake River water basin. In that regard, each case that goes before the SRBA district court is arguably not a final disposition of any claim because each claim can potentially be affected by on-going and subsequent resolution of factual and legal disputes regarding the basin. Moreover, in this case, the district judge did not have before him the state law claims at the time of his decision on the MUSYA claims because the state law claims were being investigated by the IDWR and had not yet been reported. Therefore, the district court could not have resolved, at that time, the state law-based claims. To that end, when the district court denied summary judgment to the United States on the MUSYA claims, those claims were fully and finally resolved as to their basis in federal law and, accordingly, final and appealable under Rule 54(b).

We also acknowledge, and agree with, the district court's reasoning behind certification. Namely, we recognize the court's attempt to advance the SRBA litigation by allowing the MUSYA claims to be appealed along with the Wilderness Act claims and HCNRA claims decided in the same order. Indeed, as the district court noted, "[a]ll of the federal reserved claims, Wilderness, Hells Canyon NRA and MUSYA, were decided by application of the same legal principles. Joint consideration of these subcases will allow for a clear and efficient appeal of the issues . . . ." Accordingly, because of the unique procedural aspects of the SRBA, the federal law-

based claims were properly certified under Rule 54(b).

## B. MUSYA DOES NOT PROVIDE A BA- SIS FOR FEDERAL RESERVED WATER RIGHTS.

### 1. Standard of Review

When reviewing a trial court's ruling on a summary judgment motion, the Court should employ "the same standard properly employed by the district court when originally ruling on the motion." *Lamb v. Manweiler*, 129 Idaho 269, 271–72, 923 P.2d 976, 978–79 (1996) (citing *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994)). Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 271, 923 P.2d at 978 (citing I.R.C.P. 56(c); *Mutual of Enumclaw v. Box*, 127 Idaho 851, 852, 908 P.2d 153, 154 (1995)). The record must be liberally construed in favor of the party opposing the motion for summary judgment, drawing all reasonable inferences and conclusions supported by the record in favor of that party. *Id.* at 272, 923 P.2d at 979 (citing *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 200, 899 P.2d 411, 413 (1995)). This appeal does not involve factual disputes. Whether MUSYA establishes a federal reserved water right is purely a question of law.

### 2. Federal Reserved Water Rights

As we recently noted in *United States v. State of Idaho*, 131 Idaho 468, 469, 959 P.2d 449, 450 (1998), the federal reserved water rights doctrine arises from the United States Supreme Court decision, *Winters v. United States*, 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908), a case in which the Supreme Court held that when Congress established an Indian reservation, it also, by implication, reserved the water rights necessary to achieve the reservation's purpose. The doctrine of reserved water rights has since been extended "to include public lands reserved for a particular governmental purpose, such as the creation of parks, wildlife refuges, and national forests." *U.S. v. State*, 131 Idaho at 470, 959 P.2d at 451.

A reserved water right must be based on a reservation of land. As the Supreme Court held in *Cappaert v. United States*, 426 U.S. 128, 96 S.Ct. 2062, 48 L.Ed.2d 523 (1976):

> [W]hen the Federal Government withdraws its land from the public domain and reserves it for a federal purpose, the Government, by implication, reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation. In so doing the United States acquires a reserved right in unappropriated water which vests on the date of the reservation and is superior to the rights of future appropriators. Reservation of water rights is empowered by the Commerce Clause, Art. I. § 8, which permits federal regulation of navigable streams, and the Property Clause, Art. IV, § 3, which permits federal regulation of federal lands.

*Id.* at 138, 96 S.Ct. at 2069, 48 L.Ed.2d at 534. Reserved water rights may be either express or implied. *United States v. New Mexico*, 438 U.S. 696, 699–700, 98 S.Ct. 3012, 3013–14, 57 L.Ed.2d 1052, 1056–57 (1978). Where Congress does not expressly reserve water rights, an intent to reserve unappropriated water is inferred if the previously unappropriated waters are necessary to accomplish the purposes for which the reservation was created. *Cappaert*, 426 U.S. at 139, 96 S.Ct. at 2070, 48 L.Ed.2d at 534. The necessity of water must be so great that without the water the reservation would be entirely defeated. *United States v. New Mexico*, 438 U.S. 696, 700, 98 S.Ct. 3012, 3014, 57 L.Ed.2d 1052, 1056 (1978). However, if water is only valuable for a secondary use of the reservation, the United States is left to "acquire water in the same manner as any other public or private appropriator." *Id.* at 702, 98 S.Ct. at 3015, 57 L.Ed.2d at 1058.

Therefore, in order to determine whether MUSYA provides a basis for federal reserved water rights with a priority date of 1960 we must assess 1) whether there has been a reservation of land, and, if so 2) whether the applicable acts of Congress contain an express reservation of water, and 3) if not,

whether the applicable acts imply a reservation of water. In determining whether an implied reservation exists, we must determine whether Congress "intended to reserve" unappropriated waters. *Cappaert*, 426 U.S. at 139, 96 S.Ct. at 2070, 48 L.Ed.2d at 534. An intent to reserve water will be inferred if water is necessary for the primary purposes of the reservation and if, without water, the purposes of the reservation will be entirely defeated. *New Mexico*, 438 U.S. at 700–02, 98 S.Ct. at 3013–14, 57 L.Ed.2d at 1056–58.

### 3. MUSYA

■ The United States urges this Court to determine that MUSYA creates federal reserved water rights with a priority date of June 12, 1960, the date of MUSYA's enactment. Specifically, the United States asserts that MUSYA re-reserved the national forests as of the date of its enactment for the purposes expressed in MUSYA. The State argues that MUSYA did not create a new reservation of land. Rather, the State argues that MUSYA established additional purposes for which the national forests are to be managed. In other words, the State argues that MUSYA is a land management statute, not a reservation of land. Additionally, the State asserts that the case of *United States v. New Mexico*, 438 U.S. 696, 98 S.Ct. 3012, 57 L.Ed.2d 1052 (1978) decided the issue on appeal and according to that precedent, MUSYA did not enlarge reserved water rights for national forests created pursuant to the Organic Administration Act of 1897.

The pertinent provisions MUSYA are as follows:

It is the policy of the Congress that the national forests are established and shall be administered for outdoor recreation, range, timber, watershed and wildlife and fish purposes. The purposes of sections 528 to 531 of this title are declared to be supplemental to, but not in derogation of, the purposes of which the national forests

were established as set forth in [the Organic Administration Act of 1897].[3]

16 U.S.C. § 528.

The Secretary of Agriculture is authorized and directed to develop and administer the renewable surface resources of the national forests for multiple use and sustained yield of the several products and services obtained therefrom. In the administration of the national forests due consideration shall be given to the relative values of the various resources in particular areas. The establishment and maintenance of areas of wilderness are consistent with the purposes and provisions of sections 528 to 531 of this title.

16 U.S.C. § 529.

In *New Mexico,* the Supreme Court examined MUSYA to determine whether MUSYA established an implied federal reservation of water for MUSYA purposes dating back to the enactment of the Organic Act of 1897. *Id.* at 713–15, 98 S.Ct. at 3020–21, 57 L.Ed.2d at 1064–66. The Supreme Court held that:

While we conclude that the Multiple–Use Sustained–Yield Act of 1960 was intended to broaden the purposes for which national forests had previously been administered, we agree [with the New Mexico Supreme Court] that Congress did not intend to thereby expand the reserved rights of the United States.

The Multiple–Use Sustained–Yield Act of 1960 establishes the purposes for which the national forests "*are* established and *shall* be administered." (Emphasis added.) The Act directs the Secretary of the Agriculture to administer all forests, including those previously established, on a multiple-use and sustained-yield basis. H.R. 10572, 86th Cong., 2d Sess., 1 (1960). In the administration of the national forests, therefore, Congress intended the Multiple–Use Sustained–Yield Act of 1960 to broaden the benefits accruing from all reserved national forests.

*North Idaho Properties, Inc.,* 99 Idaho 30, 38, 577 P.2d 9, 17 (1978); *New Mexico*, 438 U.S. at 706–07, 98 S.Ct. at 3017, 57 L.Ed.2d at 1060–61.

---

**3.** The purposes of the Organic Act of 1897 are preserving a perpetual supply of timber and protecting watersheds to secure favorable conditions of water flows. *See Avondale Irrigation Dist. v.*

*Id.* at 713–14, 98 S.Ct. at 3021, 57 L.Ed.2d at 1065 (emphasis in original) (footnote omitted).

After examining the House Report accompanying MUSYA, the Supreme Court concluded that "Congress did not intend in enacting the Multiple–Use Sustained–Yield Act of 1960 to reserve water for the *secondary* purposes there established." *Id.* (emphasis in original).

The United States asserts that *New Mexico*'s language relating to MUSYA is dictum because the Supreme Court did not have before it the question of whether MUSYA established a federal reserved water right with a priority date of 1960, but rather addressed whether MUSYA reached back before its enactment to expand the purposes of national forests as of the date of the Organic Act of 1897. The United States urges this Court to ignore the holding in *New Mexico* and to focus on whether MUSYA established a federal reserved water right as of June 12, 1960. Specifically, the United States points to two footnotes in *New Mexico* to bolster its assertion that the Supreme Court's holding has no binding effect on the question presented in this appeal. In footnote twenty-two, the majority stated that "[w]e intimate no view as to whether Congress, in the 1960 Act, authorized the subsequent reservation of national forests out of public lands to which a broader doctrine of reserved water rights might apply." *New Mexico*, 438 U.S. at 715 n. 22, 98 S.Ct. at 3021 n. 22, 57 L.Ed.2d at 1066 n. 22. Additionally, Justice Powell's dissent in *New Mexico* stressed that "there never has been a question in this case as to whether the 1960 Act gave rise to additional reserved water rights with a priority date of 1960 or later. . . ." *Id.* at 718 n. 1, 98 S.Ct. at 3023 n. 1, 57 L.Ed.2d at 1068 n. 1 (Powell, J., dissenting).

Although the Supreme Court did not have before it the specific question presented in this appeal, the holding of that case is still controlling on the issue at hand. As the district court held, "[t]he holding in *New Mexico* does not change because the United States now claims a 1960 priority date." The Supreme Court's analysis as to whether MUSYA reserved water for its purposes and thus created a federally reserved water right applies to either priority date.

Moreover, our own analysis of MUSYA's language and legislative history illustrate that MUSYA was not intended to be a reservation of land but was intended only to broaden the purposes for administering the national forests already reserved by the Organic Act. First, we note that the language of MUSYA does not indicate that MUSYA was intended as a reservation, or as the United States asserts, a re-reservation of the national forests. The United States argues that the language "are established" in MUSYA constitutes a re-reservation of the lands for MUSYA purposes. We do not agree that the language has such an effect. Although the language "are established" by itself could imply a reservation of land, reading the statute as a whole indicates that MUSYA was intended only to expand the purposes for which the national forests are administered. The statute does not merely state "that the national forests *are established;* " rather, the statute goes on to add that the national forests "*shall be administered* for outdoor recreation, range, timber, watershed and wildlife and fish purposes," clearly indicating an expansion of those uses for which the national forests had previously been reserved. Additionally, the purposes of MUSYA, as outlined in the statute, are "to be supplemental to, but not in derogation of, the purposes for which the national forests were established as set forth in [the Organic Administration Act of 1897]." 16 U.S.C. § 528.

Moreover, even if we were to determine that MUSYA was intended as a reservation of land, MUSYA does not indicate either an express or implied reservation of water was intended and this also compels a conclusion that MUSYA does not provide a basis for federal reserved water rights. Here, the statute, in the same way that it does not indicate a reservation of land, does not expressly declare that water is needed to accomplish a primary purpose of MUSYA. In then turning to an analysis of an implied reservation of water, we must determine whether Congress "intended to reserve" unappropriated water. *Cappaert*, 426 U.S. at 139, 96 S.Ct. at 2070, 48 L.Ed.2d at 534. An intent to reserve water will be inferred if water is necessary for the primary purposes of the reservation. *New Mexico*, 438 U.S. at

700–02, 98 S.Ct. at 3014–15, 57 L.Ed.2d at 1056–58. A federal reserved water right will be found if, without water, the purposes of the reservation will be entirely defeated. *Id.*

An examination of the legislative history illustrates that MUSYA is an administrative statute, and that no implied reservation of land or water was intended. MUSYA merely expands the purposes for which the national forests are to be administered. The House Report states (and the Senate Report includes almost identical language) that:

> The addition of the sentence to follow the first sentence in section 1 is to make it clear that the declaration of congressional policy that the national forests are established and shall be administered for the purposes enumerated is supplemental to, but is not in derogation of, the purposes of improving and protecting the forest or for securing favorable conditions of water flows and to furnish a continuous supply of timber as set out in the cited provision of the act of June 4, 1897 [the Organic Administration Act]. Thus, in any establishment of a national forest a purpose set out in the 1897 act must be present but there may also exist one or more of the additional purposes listed in the bill. In other words, a national forest could not be established just for the purpose of outdoor recreation, range, or wildlife and fish purposes, but such purposes could be a reason for the establishment of the national forest if there also were one or more of the purposes of improving and protecting the forest, securing favorable conditions of water flows, or to furnish a continuous supply of timber as set out in the 1897 act. It is also clear the Secretary of Agriculture shall administer the national forests for all of their renewable natural resources, and none of these resources is given a statutory priority over the others.

H.R.Rep. No. 155, at 4 (1960) *reprinted in* 1960 U.S.C.C.A.N. 2377, 2380.[4] *See also* S.Rep. No. 1407, at 4 (1960). As the Supreme Court held in *New Mexico,* the report indicates that the purposes of MUSYA are to be supplemental to, but not in derogation of the purposes of the Organic Act. *New Mexico,* 438 U.S. at 714, 98 S.Ct. at 3021, 57

L.Ed.2d at 1065. Thus, because the purposes of MUSYA are to be supplemental to the Organic Act purposes, they are secondary uses and "there arises the contrary inference that Congress intended, consistent with its other views, that the United States would acquire water in the same manner as any other public or private appropriator" and no intent to reserve water can be inferred. *Id.* at 715, 98 S.Ct. at 3021, 57 L.Ed.2d at 1065.

Additional legislative history also illustrates that MUSYA does not create an implied federal reservation of water but is purely an administrative act. For instance, when addressing the need for the legislation, the House Report makes constant reference to the purpose of the Act as one to enhance and improve administration, but does not state or imply that something beyond administration, *i.e.,* a reservation of land or water, was intended. The report states:

> The administration of the national forests has long been under the policies of multiple use and sustained yield. Although there is no question as to the authority to so administer the national forests, there are four basic reasons for the enactment of this bill: (1) There should be a statutory directive to administer the national forests under sustained yield; (2) there should be a similar directive to administer the national forests for multiple use; (3) all the renewable surface resources for which the national forests are established and shall be administered should be named in a single statute; and (4) enactment would help to implement the program for the national forests sent to the Congress in March of 1959....

H.R.Rep. No. 1551, at 2 (1960), *reprinted in* 1960 U.S.C.C.A.N. 2377, 2378.

In conclusion, the express language of MUSYA, its legislative history and the Supreme Court's analysis of MUSYA in *New Mexico* lead to the conclusion that MUSYA does not create a federal reservation of water as of the date its enactment, June 12, 1960. MUSYA was intended to broaden the purposes for which the national forests had been administered, but did not create a reservation of land and moreover, did not establish

---

4. We note that the majority of this legislative history was also quoted and examined by the Supreme Court in *New Mexico,* 438 U.S. at 714–15, 98 S.Ct. at 3021, 57 L.Ed.2d at 1065–66.

an express or implied reservation of water because the expanded purposes created by MUSYA are merely supplemental and secondary to the purposes of the Organic Act, even as of the date of MUSYA's enactment. Because the purposes of MUSYA are secondary, we need not address whether the purposes of MUSYA would be entirely defeated without the water. Accordingly, we hold that MUSYA does not establish a federal reserved water right and thus, the district court correctly determined that MUSYA does not support federal reserved water rights.

## III.

## CONCLUSION

We affirm the order of the district court certifying the United States' MUSYA claim under Rule 54(b). Additionally, we affirm the district court's denial of summary judgment to the United States for federal reserved water rights claims based on the Multiple–Use Sustained–Yield Act of 1960.

Justices SILAK, SCHROEDER, and WALTERS, concur.

Justice KIDWELL, specially concurring.

I am pleased to join the majority in holding that the Multiple–Use Sustained–Yield Act is not a federal reservation of land that would create an implied federal water right in Idaho. However a subtle, but critical point needs to be clarified in my opinion. The majority opinion cites *Cappaert v. United States,* 426 U.S. 128, 140, 96 S.Ct. 2062, 2070, 48 L.Ed.2d 523, 535 (1976), for the proposition that "an intent to reserve unap-propriated water is inferred if the previously unappropriated waters are necessary to accomplish the purposes for which the reservation was created." While this statement is an accurate partial holding of *Cappaert,* I believe it could be misread to imply that *all* unappropriated waters are reserved. The holding in *Cappaert* is much more limited than this possibly over-broad interpretation.

The U.S. Supreme Court emphasized that the "implied-reservation-of-water-rights doctrine, . . . reserves only that amount of water necessary to fulfill the purpose of the reservation, no more." *Cappaert,* 426 U.S. at 140, 96 S.Ct. at 2071, 48 L.Ed.2d at 535 (citing *Arizona v. California,* 373 U.S. 546, 600–01, 83 S.Ct. 1468, 1497–98, 10 L.Ed.2d 542, 578–79 (1963)). This means that once an implied federal reservation of water has been found, the district court must determine the "minimal need" of the reservation necessary to "implement[ ] the stated objectives." *Cappaert,* 426 U.S. at 141, 96 S.Ct. at 2071, 48 L.Ed.2d at 536.

This discussion and distinction becomes critically important as the Court considers other federal legislation and cases before us that contain other re-designations or reservations of federal land and the attendant question of whether federal water rights are going to be created by implication in the State of Idaho.

Justice SCHROEDER, concurs.