# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 43755

MICHAEL SCOTT MOLEN, ........... )
......................................................... ) **Boise, December 2016 Term**
.............. Plaintiff-Appellant, ....... )
......................................................... ) **2017 Opinion No. 6**
v. .................................................... )
......................................................... ) **Filed: January 24, 2017**
RONALD D. CHRISTIAN, ........... )
......................................................... ) **Stephen W. Kenyon, Clerk**
.............. Defendant-Respondent. ... )
......................................................... )

_____

Appeal from the District Court of the Fourth Judicial District of the
State of Idaho, Ada County.  Hon. Lynn G. Norton, District Judge.

The district court's summary judgment order is vacated and this matter
is remanded for further proceedings consistent with this Opinion.
Costs on appeal are awarded to appellant.

Dartanyon Burrows, Payette, attorney for appellant.

Points Law, PLLC, Boise, attorneys for respondent. Michelle R.
Points argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

Appellant, Michael Scott Molen ("Molen"), appeals the district court's summary judgment dismissal of his legal malpractice action. The malpractice action stems from Respondent, Ronald Christian's ("Christian"), representation of Molen in a criminal case. The crux of this appeal is whether the statute of limitations on Molen's malpractice cause of action accrued upon Molen's initial criminal conviction or when Molen was later exonerated.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 19, 2005, Molen was charged with lewd conduct with a minor child, S.Z. Molen pleaded not guilty at his arraignment. On the morning of trial, Christian arrived at the courthouse under the influence of alcohol. His blood alcohol content was measured at .329 and

1

.344. The trial was vacated. An amended information was filed on May 11, 2007, and the case proceeded to jury trial on June 18, 2007.

At trial, S.Z. testified as to Molen's sexual contact with her during the summers of 2004 and 2005. Alisa Ortega, a pediatric nurse practitioner employed by St. Luke's Regional Medical Center CARES[1] unit, testified that her examination of S.Z. was consistent with the sexual abuse disclosed by S.Z. On cross-examination, Nurse Ortega disclosed for the first time that there were photographs of a colposcopic genital examination of S.Z. that had not been previously provided to either the State or the defense. Doctor Edward Robert Friedlander was the defense's medical expert. Consulting on sex abuse cases was not a major part of his practice. He did not see the photographs disclosed by Nurse Ortega until about 90 minutes before he testified. He testified that the photographs from the colposcopic genital examination did not support a finding of sexual abuse.

On June 22, 2007, the jury returned a guilty verdict. Molen moved for a new trial arguing that the disclosure of the photographs of the colposcopic examination was unfair. The district court denied Molen's motion. On June 4, 2008, Molen was sentenced to twenty years consisting of eight years fixed and twelve years indeterminate. Molen appealed his conviction, but the conviction was affirmed by the Idaho Court of Appeals.

On May 23, 2011, Molen filed a *pro se* petition for post-conviction relief asserting that his trial and appellate counsel were ineffective and that prosecutorial misconduct denied him a fair trial. On January 23, 2012, the State filed a motion for summary dismissal of the amended petition. On April 1, 2013, Molen, through court appointed counsel, filed a second amended petition for post-conviction relief, which alleged ineffective assistance of counsel.

On December 26, 2013, Molen and the State filed a statement of stipulated reasons to resolve the post-conviction case. Therein, the parties agreed that post-conviction relief was warranted. In a chambers conference with counsel, the district court advised that it would not grant the stipulated resolution; however, it scheduled an evidentiary hearing to be held on April 28 and 29, 2014. Around April 7, 2014, at a status conference, counsel disclosed that they had recently learned of an additional CARES interview of S.Z., which would require granting post-conviction relief. According to counsel, S.Z. made statements to Nurse Ortega that contradicted S.Z.'s previous statements. Counsel asserted that those statements were subject to *Brady v.*

---

[1] Children at Risk Evaluation Services.

*Maryland*, even if unknown to the State, because of the role the CARES unit has in criminal investigations of child sexual abuse. 373 U.S. 83 (1963) (holding that the prosecution must disclose to the defense all exculpatory evidence known to the state or in its possession).

On April 23, 2014, Molen and the State filed a joint stipulation of facts and points of authority related to the *Brady* material and a joint motion for summary judgment in favor of Molen. The parties jointly stipulated that Molen was entitled to post-conviction relief due to the contents of the newly discovered CARES interview.

On June 17, 2014, the district court granted the petition for post-conviction relief, but denied the stipulated motion for summary judgment.[2] The district court's grant of post-conviction relief was premised on the conclusion that Molen's trial counsel's performance fell below an objective standard of reasonableness in: (1) failing to consult with and/or retain an expert in pediatric sexual abuse; (2) failing to discover the existence of the colposcopic photographs prior to trial; and (3) failing to request either a continuance of the trial or a mistrial so that the new evidence could be reviewed by an expert in pediatric sexual abuse. The district court vacated the judgment of conviction entered on January 7, 2008, granted Molen a new trial, and ordered the Idaho Department of Corrections to release Molen from custody. In a hearing on July 10, 2014, the district court granted the State's motion to dismiss the case.

On February 17, 2015, Molen filed suit against Christian asserting legal malpractice and breach of contract arising from the criminal lawsuit in which Christian represented Molen. On March 10, 2015, Christian filed a motion to dismiss wherein he argued that Molen's cause of action was barred by the two year statute of limitations. Molen filed responsive briefing on April 2, 2015. Therein, he argued that his claims were not barred by the statute of limitations because his cause of action against Christian did not accrue until June 17, 2014, when he was granted post-conviction relief. The district court denied Christian's motion to dismiss because there were questions of fact as to when there was objective proof of damages. On August 7, 2015, Christian filed a motion for summary judgment, which again asserted that Molen's claim was barred by the statute of limitations.

---

[2] The stipulated motion for summary judgment was denied because the late disclosed Nurse Ortega conversation was not a *Brady* violation. The district court reasoned that the Nurse Ortega conversation was not a *Brady* violation because there was no reasonable probability of a different result solely due to the delayed disclosure of the conversation.

On October 23, 2015, the district court granted Christian's motion for summary judgment. In its memorandum decision and order granting summary judgment, the district court analyzed two issues: (1) when the cause of action for the criminal legal malpractice claim accrued; and (2) whether actual innocence is an element of a criminal legal malpractice claim. The district court expressed concern regarding the fact that Idaho does not have substantive caselaw discussing either issue.

After introducing the basic elements of a malpractice action, the district court noted that the parties were in agreement regarding the facts. The parties disagreed, however, as to how the facts applied under the law. The district court indicated that it was inclined to adopt the exoneration rule[3] because it aligned with Idaho's public policy based on civil malpractice cases. Ultimately, though, the district court refrained from doing so, noting that such a decision "must come through the Idaho Supreme Court." The district court felt "constrained to conclude" that Molen's cause of action against Christian accrued in 2007, at the time the actions constituting malpractice occurred. Specifically, the district court held that Christian's conduct related to Molen's criminal trial was "sufficiently bad" that regardless of whether Molen was convicted or not, there was an "objectively ascertainable occurrence of some damage" and related causation in 2007. The district court noted that it did not find the result particularly equitable because it "seems unfair to deny [Molen] his right to pursue and prove damages against [Christian]."

As to the second issue—whether actual innocence is an element of a legal malpractice claim arising from a criminal conviction—the district court concluded that it would only be an issue if this Court adopts the exoneration rule.

### III. ISSUES ON APPEAL

1.  Whether the district court erred in granting summary judgment in favor of Christian.

2.  Whether actual innocence is an element of a malpractice action arising from a criminal conviction.

3.  Whether Christian is entitled to attorney's fees on appeal.

### IV. STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, we review that decision de novo but apply the same standard used by the district court in ruling on the motion. As a general rule, this Court will affirm the judgment if the pleadings, depositions, and admissions on file, together with the

---

[3] Generally, the exoneration rule requires successful direct or collateral relief prior to filing suit against a criminal defense attorney for legal malpractice.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. When making its determination, the Court construes all facts in the light most favorable to the nonmoving party.

*Parks v. Safeco Insurance Company of Illinois*, 160 Idaho 556, 560–61, 376 P.3d 760, 764–65 (2016) (internal quotations and citations omitted).

> The time when a cause of action accrues may be a question of law or a question of fact, depending upon whether any disputed issues of material fact exist. Where there is no dispute over any issue of material fact regarding when the cause of action accrues, the question is one of law for determination by the court.

*Nerco Minerals Co. v. Morrison Knudsen Corp.*, 140 Idaho 144, 148, 90 P.3d 894, 898 (2004). (internal quotations and citations omitted).

## V. ANALYSIS

**A.     The district court erred by granting summary judgment.**

We hold that the statute of limitations for a legal malpractice action does not begin to run until the plaintiff has been exonerated of the underlying criminal conviction. Accordingly, we vacate the district court's summary judgment order.

Idaho Code section 5-219(4) provides that a two year statute of limitations applies to actions to recover damages for professional malpractice. I.C. § 5-219(4). Further, the statute provides:

> [T]he cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer . . . .

*Id.*

While the plain language of Idaho Code section 5-219(4) provides that the cause of action accrues "as of the time of the occurrence, act or omission complained of," this Court has applied the completed tort theory to delay the accrual of statutes of limitations to "avoid absurd results." *Davis v. Moran*, 112 Idaho 703, 708, 735 P.2d 1014, 1019 (1987). In *Minnick v. Hawley Troxell Ennis and Hawley, LLP*, this Court explained the completed tort theory as it applies to professional negligence claims:

> The statute's accrual standard operates under a completed tort theory in that the cause of action accrues when the tort is completed, an event that corresponds with the first objectively ascertainable occurrence of some damage. *See*, *e.g.*, *Streib v. Veigel*, 109 Idaho 174, 178–80, 706 P.2d 63, 67–69 (1985). What constitutes

some damage turns on the facts and circumstances of each case. *Bonz v. Sudweeks*, 119 Idaho 539, 543, 808 P.2d 876, 880 (1991).

157 Idaho 863, 866–67, 341 P.3d 580, 583–84 (2015). "Likewise, what constitutes 'objective proof' of the existence of some damage suffered by the client also must be decided on the circumstances of each case." *City of McCall v. Buxton*, 146 Idaho 656, 662, 201 P.3d 629, 635 (2009).

The rationale behind the completed tort theory was illustrated in *Buxton*, where this Court held that "the existence or effect of any alleged negligence on the part of the City's Attorneys . . . depended upon the outcome of the litigation" because until the outcome was determined, there would not be objective proof of actual damage. *Id.* at 663, 201 P.3d at 636.

> To hold otherwise in this case "would foment future litigation initiated on sheer surmise of potential damages in order to avoid the likely consequence of seeing actions barred by limitations." *Mack Financial Corp. v. Smith*, 111 Idaho 8, 12, 720 P.2d 191, 195 (1986). Clients involved in lengthy litigation would have to file protective lawsuits against their attorneys when following their advice and strategy, without yet having any objective proof of actual damage or being able to prove a cause of action for professional malpractice.

*Id.* In other words, it makes little sense for a plaintiff, on one hand, to rely on their attorney, but on the other hand, file a protective malpractice action to prevent the claim from being later barred by the statute of limitations. Applying the completed tort theory resolves the conflict.

Despite the significant precedent in respect to the accrual of malpractice causes of action in tort cases, this Court has not addressed the issue in the criminal context. Other jurisdictions have resolved the cause of action accrual issue in one of two ways: (1) holding that a cause of action for criminal legal malpractice accrues when the criminal defendant obtains direct or collateral relief from the underlying criminal conviction—known as an exoneration rule[4]; or (2) rejecting an exoneration rule[5], and instead requiring the convicted party to pursue post-

---

[4] In *Rantz v. Kaufman*, 109 P.3d 132, 135 (2005), the Colorado Supreme Court cited the following cases to demonstrate that "many jurisdictions that have considered [the exoneration rule] have adopted some form of postconviction [sic] relief as a prerequisite to maintaining the malpractice action": *Shaw v. State*, 816 P.2d 1358 (Alaska 1991); *Coscia v. McKenna & Cuneo*, 25 P.3d 670 (Cal. 2001); *Steele v. Kehoe*, 747 So.2d 931 (Fla. 1999); *Levine v. Kling*, 123 F.3d 580 (7th Cir. 1997) (applying Illinois law); *Trobaugh v. Sondag*, 668 N.W.2d 577 (Iowa 2003); *Canaan v. Bartee*, 72 P.3d 911 (Kan. 2003); *Noske v. Friedberg*, 670 N.W.2d 740 (Minn. 2003); *Morgano v. Smith*, 879 P.2d 735 (Nev. 1994); *Carmel v. Lunney*, 511 N.E.2d 1126 (N.Y. 1987); *Stevens v. Bispham*, 851 P.2d 556 (Or. 1993); *Bailey v. Tucker*, 621 A.2d 108 (Pa. 1993); *Gibson v. Trant*, 58 S.W.3d 103 (Tenn. 2001); *Peeler v. Hughes & Luce*, 909 S.W.2d 494 (Tex. 1995); *Adkins v. Dixon*, 482 S.E.2d 797 (Va. 1997).

[5] The *Rantz* court also cited the following cases to demonstrate that "[s]everal other jurisdictions have directly or impliedly declined to make prior postconviction [sic] relief a requirement for suit": *Mylar v. Wilkinson*, 435 So.2d

conviction relief and the malpractice action simultaneously, or risk the malpractice action being later barred by the statute of limitations.

We hold that Molen's malpractice cause of action did not accrue until he was exonerated, which occurred on July 10, 2014. If the exoneration rule is not adopted, then a convicted defendant will have to file two lawsuits simultaneously: (1) a malpractice claim, and (2) an appeal and/or post-conviction relief proceeding. The malpractice claim would essentially serve as a protective lawsuit to prevent the claim from being later barred by the statute of limitations. The appeal and/or post-conviction proceeding, if successful, would then be the basis for the malpractice action. Such a result would be contrary to this Court's holding in *Buxton*. 146 Idaho at 663, 201 P.3d at 636. That is, this Court does not favor protective lawsuits that must be filed only to be stayed. *Id.* It is a waste of the district court's resources to deal with such cases, which may never actually be pursued.

In sum, we hold that Molen's malpractice cause of action did not begin to accrue until he was exonerated on July 10, 2014. Accordingly, the district court erred in holding that his malpractice cause of action, which was filed on February 17, 2015, was barred by the two year statute of limitations.

**B.      Actual innocence is not an element of a criminal malpractice cause of action.**

This Court has addressed a legal malpractice claim arising from a criminal case only once, in *Lamb v. Manweiler*, 129 Idaho 269, 923 P.2d 976 (1996). *Lamb* did not address the statute of limitations issue; however, *Lamb* did address—in dicta—the actual innocence element. *Id.* at 272, 923 P.2d at 979. Before the appeal reached this Court, the Idaho Court of Appeals vacated and remanded the district court's grant of summary judgment. In doing so, the Idaho Court of Appeals addressed an issue of first impression in Idaho: where a legal malpractice suit stems from the representation of a client in a criminal prosecution, must a plaintiff prove actual innocence? The Idaho Court of Appeals held that a plaintiff must prove that he or she was in fact innocent of a crime. Manweiler petitioned this Court for review, and this Court affirmed the district court's grant of summary judgment. This Court did not expressly require actual

---

1237 (Ala. 1983); *McCord v. Bailey*, 636 F.2d 606 (D.C. 1980); *Glenn v. Aiken*, 569 N.E.2d 783 (Mass. 1991) (former client has burden of proving innocence of underlying charge); *Gebhardt v. O'Rourke*, 510 N.W.2d 900 (Mich. 1994); *Jepson v. Stubbs*, 555 S.W.2d 307 (Mo. 1977); *Ereth v. Cascade County*, 81 P.3d 463 (Mont. 2003); *Rodriguez v. Nielsen*, 609 N.W.2d 368 (Neb. 2000) (requires establishment of "actual innocence"); *Mahoney v. Shaheen, Cappiello, Stein & Gordon*, 727 A.2d 996 (N.H. 1999).

innocence as an element of the claim; rather, it stated that "Lamb does not dispute the proposition that in a legal malpractice action arising from representation of a defendant in a criminal proceeding, the person pursuing the claim must establish the additional element of actual innocence of the underlying criminal charges." *Id.*

We hold that actual innocence is not an element of a criminal malpractice cause of action. Requiring a criminal malpractice plaintiff to prove actual innocence is contrary to the fundamental principle that a person is presumed innocent until proven guilty beyond a reasonable doubt. Further, a criminal defendant can be harmed separately from the harm he or she incurs as a result of being guilty of a crime. *See Piris v. Kitching*, 375 P.3d 627 (Wash. 2016). Additionally, as a practical matter, requiring actual innocence would essentially eliminate a defense attorney's duty to provide competent counsel to a client he or she knows to be guilty. For the foregoing reasons, we hold that actual innocence is not an element of a criminal malpractice cause of action.

**C.      Christian is not entitled to attorney's fees on appeal.**

We deny Christian's request for attorney's fees on appeal because he is not the prevailing party.

## VI. CONCLUSION

We vacate the district court's summary judgment order and remand the case for further proceedings consistent with this opinion. Costs on appeal are awarded to Molen.

Chief Justice J. JONES, Justices EISMANN, BURDICK and HORTON, CONCUR.